STATE of Missouri, Respondent,

v.

James A. PURLEE, Appellant.

No. 074653.

Supreme Court of Missouri,
En Banc.

Oct. 27, 1992.

C.R. Rhoades, Neosho, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PRICE, Judge.

After a jury trial, James A. Purlee was convicted of possession of more than 35 grams of marijuana and unlawful use of a weapon. Purlee appeals both convictions, claiming insufficient evidence. We find that there was sufficient evidence to support the jury verdicts and affirm the judgment.

## I.

The evidence presented to the jury established that on the evening of October 1, 1989, Missouri State Highway Patrolman Timothy Rousset pulled over a brown van traveling eastbound on Interstate 44 outside Joplin. The van was going 62 m.p.h. in a 55 m.p.h. speed zone. Its occupants were James Purlee, the driver, and Mark Schmidt, who was riding in the front passenger seat. Trooper Rousset approached the driver's door. At his request, Purlee rolled down his window and produced an Illinois driver's license. Purlee stated that the van's cruise control had been set at 58 m.p.h. and that he was not aware the speed limit was 55 m.p.h. in that area. During this conversation Trooper Rousset detected a "very strong" odor of raw marijuana coming outside the window.

Trooper Rousset asked Purlee to accompany him to the patrol car. As soon as Purlee exited the van the officer handcuffed him, patted him down, and placed him under arrest for possession of marijuana. Trooper Rousset led Purlee behind the van and left him in the custody of a companion who had been riding in the patrol car. The officer then removed Schmidt from the vehicle, handcuffed him, arrested him, and also led him behind the van. Trooper Rousset informed Purlee and Schmidt that he smelled marijuana very strongly and asked them if they had marijuana in the vehicle. They each responded, "No." The officer then proceeded to search the van.

Trooper Rousset opened the double doors to the van's rear storage compartment. He found two large green duffel bags, one partially stuffed under the back bench seat and the other propped up and covered by two leather jackets. These bags contained a total of 86.29 pounds of raw marijuana, compressed into eight round, foot-wide "bricks." One of the leather jackets contained personal papers, including a car title and a bill of sale, belonging to Schmidt. The other leather jacket and a third jacket were empty. Trooper Rousset noticed a small blue and yellow zippered duffel bag in the rear of the van. This bag had some clothing and a postcard addressed to "James Purplee" at the same address later given by Purlee for the investigative arrest report. It did not contain any drugs.

Trooper Rousset then called a wrecker, took the marijuana to his patrol car, and subjected the van to a more detailed search. He found a loaded .38 caliber Smith & Wesson revolver lying on the floorboard between the two front seats and behind the van's engine console, closer to the driver's side. The officer testified that he did not see the weapon on his initial approach because it was only visible by entering the van and looking over the passenger seat. He also testified that the revolver was not covered up with any debris and that it could not be completely concealed under the van's pedestal-style captain's chairs. He admitted that Purlee had no drugs on his person, that his breath did not smell of marijuana, and that he behaved like a gentleman.

Purlee testified that he lives in Collinsville, Illinois, and went to Arizona to visit a high school friend and see the Grand Canyon. He bought a one-way airline ticket from St. Louis to Tucson for about $200.00 in cash, but he did not make a return reservation or inquire about return flights although he planned to fly back after a week. While in Tucson Purlee met Schmidt, who was a prior acquaintance, and impulsively decided to ride back to Collinsville with him to save money and to help him drive. Purlee stated that he first saw the van when Schmidt picked him up at the friend's house, and that he tossed his small duffel bag into the back of the van but did not see the large duffel bags already there. He asserted that he did not recognize any "unique or distinct odors" in the twelve hours he spent riding in the van, that he did not know the smell of marijuana prior to his arrest, and that he was not aware of the marijuana's presence until he was arrested. He stated that Schmidt put the revolver on the floor by the front seats early on during the trip. Purlee said he did not touch the gun and did not know whether it was loaded, although he admitted that he could have easily picked it up while sitting in the driver's seat.

The jury found Purlee guilty of the class C felony of possession of more than 35 grams of marijuana, § 195.202, RSMo Supp.1989 (Count I), and of the class D felony of unlawful use of a weapon, § 571.030.1(1), RSMo 1986 (Count II). He was sentenced to concurrent terms of seven and five years, respectively, and fined $100.00.

## II.

■ Purlee challenges the trial court's denial of his motions for judgment of acquittal filed at the close of the State's case and at the close of all the evidence. Because he presented evidence in his own behalf after the State rested, Purlee waived any claim of error related to the denial of his motion at the close of the State's case. *State v. White*, 798 S.W.2d 694, 696–7 (Mo. banc 1990). For purposes of this review, the proper focus is whether the motion for acquittal made at the close of all the evidence should have been sustained. *State v. McQuerry*, 406 S.W.2d 624, 626 (Mo.1966).

■ On a challenge to the sufficiency of the evidence, the evidence and all reasonable inferences drawn therefrom are viewed in a light most favorable to the jury's verdict, disregarding all contrary evidence and inferences. *State v. Davis*, 814 S.W.2d 593, 594 (Mo. banc 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992). Appellate review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). When the State's case is founded entirely upon circumstantial evidence, the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must exclude every reasonable hypothesis of his innocence. But they need not be absolutely conclusive of guilt, and they need not demonstrate the impossibility of innocence. *State v. Biddle*, 599 S.W.2d 182, 192 (Mo. banc 1980), *citing State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

■ Purlee's first point on appeal contends that the State did not produce sufficient evidence to convince a rational juror that he was aware of, or had access to, the marijuana hidden in the duffel bags in the van's rear storage compartment. To sustain a conviction for possession of a controlled substance, the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance. Both possession and knowledge may be proved by circumstantial evidence. *State v. Barber*, 635 S.W.2d 342, 343 (Mo.1982).[1]

---

1. *Barber* was decided under § 195.020, RSMo 1978. This statute was repealed and replaced by § 195.202 under the Comprehensive Drug Control Act of 1989. The definition of possession applicable to the current statute, found in § 195.010(33), RSMo Supp.1989, "adopts and

The two prongs of this test are not entirely independent. Absent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance. *Id.* Thus, proof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found. Defendant's *exclusive* control of the premises is enough to raise an inference of possession and control of the substance. *Joint* control of the premises, however, requires some further evidence or admission connecting the accused with the illegal drugs. *Id.; State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975). It follows that merely being a guest in the premises of another where drugs are found is not sufficient to sustain a conviction for possession of controlled substances. The State must present some incriminating circumstance that implies that the accused knew of the presence of the drugs and that the same were under his control. *Id.*

The following four factors incriminate Purlee and support the jury's verdict. First and most importantly, Trooper Rousset testified that the odor of raw marijuana coming from the van was very strong. After denying that he has any particular ability to smell the drug, Trooper Rousset stated, "I think anybody could have smelled marijuana in the circumstances I have." The officer's prompt arrest of Purlee and Schmidt for possession of marijuana, before searching the vehicle and absent tangible evidence of the drug, underscores the strength of the aroma emanating from the van.

Purlee's professed failure to recognize any unusual odors after spending twelve hours inside the closed van apparently was not credible to the jury. This situation is analogous to that discussed in *State v. Harris,* 807 S.W.2d 528 (Mo.App.1991). There, the defendant asserted that he did not see a container of cocaine solution and a syringe, which lay at his feet for over two hours while he and a companion sat in a parked truck, even though he was observed bending down toward the floor. The court stated that accepting the defendant's reasoning "would have compelled the jurors to conclude either that he kept his eyes closed all night or that a miracle of spontaneous generation occurred when the rangers searched the truck." *Id.* at 530. Similarly, the evidence presented in this case allowed the jury to properly infer that Purlee was aware of the presence and nature of the contraband because of the inescapable odor of raw marijuana permeating the interior of the van. *See State v. Adkins,* 800 S.W.2d 28, 31 (Mo.App.1990).

Second, Purlee's duffel bag was found in the rear storage compartment of the van, next to two large bags containing 86 pounds of marijuana. The presence of a defendant's personal effects next to contraband supports an inference of access to the contraband. *See State v. Stolzman,* 799 S.W.2d 927, 932 (Mo.App.1990); *State v. Dusso,* 760 S.W.2d 546, 548 (Mo.App.1988). The presence of a large quantity of drugs coupled with ready access to the drugs tends to show conscious possession. *State v. Wilkerson,* 796 S.W.2d 388, 396 (Mo.App. 1990); *State v. Mischanko,* 743 S.W.2d 867, 869 (Mo.App.1987); *cf. Barber,* 635 S.W.2d at 344.

connotes the gloss of antecedent judicial opinions." *State v. Phegley,* 826 S.W.2d 348, 353 (Mo.App.1992). Thus, the 1989 Act "does not vary the meaning of constructive possession nor its legal proof under the predecessor statute." *Id.* § 195.010(33) states:

(33) **"Possessed"** or **"possessing a controlled substance",** a person, with the knowledge of the presence and illegal nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint.

Although Purlee said that he merely tossed his bag on the floor in the back of the van from the passenger compartment and that he did not enter the storage compartment, he could not explain how his bag came to rest by the large duffel bags containing marijuana. Whether or not Purlee had previously entered the van's rear storage compartment, the jury could reasonably infer that he would have to obtain access to it in order to retrieve his duffel bag. Further, this case is distinguishable from previous cases in which it could not be conclusively shown that the accused had access to an enclosure where drugs were found, because the contraband was mingled with Purlee's personal effects and was not within a separate enclosure. *See State v. Boney,* 749 S.W.2d 418, 420 (Mo.App. 1987); *State v. Allen,* 744 S.W.2d 865, 868 (Mo.App.1988); *State v. Bowyer,* 693 S.W.2d 845, 849 (Mo.App.1985); *State v. West,* 559 S.W.2d 282, 285 (Mo.App.1977).

Third, Purlee admitted that he knew he was driving with a revolver lying next to his seat and within easy reach, although he claimed not to know whether it was loaded. The jury could have inferred that the weapon was intended to protect the van's valuable cargo during the long trip from Tucson to Collinsville, thus buttressing the inference that Purlee was in conscious, knowing possession of the marijuana. *See Wilkerson,* 796 S.W.2d at 396; *State v. Gibbs,* 600 S.W.2d 594, 599 (Mo.App.1980).

Fourth, Purlee bought a one-way airline ticket to Tucson without making a return reservation, even though he intended to fly back within a week. Despite Purlee's testimony to the contrary, the jury could have inferred that the purpose of Purlee's trip to Tucson was to collect and transport a load of marijuana to his home town in Illinois.

▮ These four factors establish that the jury's verdict was consistent with the most reasonable hypothesis, Purlee's guilt.

2. *Biddle,* 599 S.W.2d at 192.

3. Earlier decisions by this Court interpreted statutes that have since been repealed, but they remain applicable because the essential elements of concealment and accessibility have been expressly retained in the current statute. The relevant portion of the older statutes made

It must be remembered that the circumstances "need not be absolutely conclusive of guilt, and they need not demonstrate impossibility of innocence."[2] While the jury might have chosen to acquit Purlee, they did not. An acquittal verdict would have been inconsistent with the totality of facts reasonably considered, excepting only Purlee's denials. Even in a case based in part upon circumstantial evidence, this is sufficient. Purlee's first point is denied.

### III.

Purlee's second point on appeal alleges that the State did not produce sufficient evidence to support the conviction for unlawful use of a weapon, because the weapon was not concealed from ordinary observation; or alternately, because Purlee was traveling in a continuous journey peaceably through the state.

### A.

Purlee was charged with violating § 571.030.1(1), RSMo 1986,[3] which states:

1. A person commits the crime of unlawful use of weapons if he knowingly:

(1) Carries concealed upon or about his person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use;

The relevant statutory exceptions are listed in § 571.030.3:

Subdivision[ ] (1) ... of subsection 1 of this section do[es] not apply when the actor is transporting such weapons in a nonfunctioning state or in an unloaded state when ammunition is not readily accessible or when such weapons are not readily accessible. Subdivision (1) of subsection 1 of this section does not apply when the actor ... is traveling in a continuous journey peaceably through this state.

it a crime for a person to "carry concealed upon or about his person a dangerous or deadly weapon", with an exemption (among others) for "persons traveling in a continuous journey peaceably through this state." § 571.115, RSMo 1978; § 564.610, RSMo 1949.

The essential elements of the offense are the knowing concealment and accessibility of a functional lethal weapon. A weapon is accessible if it is in such close proximity to the accused as to be within his easy reach and convenient control. *State v. Patterson*, 624 S.W.2d 11, 13 (Mo.1981); *State v. Bordeaux*, 337 S.W.2d 47, 49 (Mo. 1960). Purlee admitted that he was aware of the revolver's presence by his right-hand side, and that he could have reached it and picked it up if he had bent down. Trooper Rousset testified that the gun was loaded, and a forensic analyst from the Missouri Highway Patrol testified it was operational. The evidence established that Purlee knew there was a lethal weapon within his easy reach and convenient control, and that this weapon was functional and loaded. Thus, the only issue in dispute is whether the revolver was "concealed" within the meaning of the statute.

The test of concealment is whether a weapon is so carried as not to be discernible by ordinary observation. *Bordeaux*, 337 S.W.2d at 49. When the weapon is not fully covered or enclosed, the court of appeals has formulated the test as follows:

> [A] weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other positions. It may be concealed, however, where it is discernible only from one particular vantage point.

*State v. Cavin*, 555 S.W.2d 653, 654 (Mo. App.1977), *citing State v. Miles*, 124 Mo. App. 283, 101 S.W. 671, 672 (Mo.App.1907).

Moreover, when a loaded firearm is carried in a vehicle within easy reach of the occupants, "ordinary observation" is tested from the vantage point of an approaching officer:

> Appellant argues the officer never got close enough to have a vantage point from which he could see where the weapon had been in the car.... The record fails to establish whether the gun was hidden or not. The gun could have been on the dashboard or uncovered on the seat of the car, and readily discernible by ordinary observation had the police officer been closer than five feet to the vehicle.

*State v. Pruitt*, 755 S.W.2d 309, 313 (Mo. App.1988); and,

> He [the trooper] could not see the weapon from the driver's side of the Corvette, nor through the right side window, but he saw it lying under the driver's seat, with its butt sticking toward the front of the car *only* when he shined his light down toward the thin bucket seat from the right front side of the wind-shield. From this evidence, the jury could conclude that the weapon, being carried in the car and readily accessible to appellant while driving the car, was not discernible by ordinary observation.

*Gibbs*, 600 S.W.2d at 597.

This Court has previously held that a loaded weapon lying on the floor of a vehicle so that it cannot be seen from outside the vehicle is concealed:

> The jury could reasonably find that the sawed-off shotgun was placed by appellant upon the floor of the truck directly under the driver's seat, that it could not be seen by a person outside the truck, and that its presence was not discernible by ordinary observation.

*Patterson*, 624 S.W.2d at 13; and,

> In the present case, the police officers saw no weapon when they first drew alongside the defendant's automobile. They saw it only after the defendant took his right hand off the steering wheel, reached down and came up with the revolver, which he immediately threw from the automobile. This was sufficient evidence of concealment to satisfy the statute.

*Bordeaux*, 337 S.W.2d at 49.

Trooper Rousset repeatedly testified that he did not and could not see the revolver from outside the van:

Q. When you took the Defendant out the driver's side, you didn't see a weapon?

A. No, sir.

\* \* \* \* \* \*

Q. And, in fact, if the weapon was obscured from your view, it was either

obscured from your view by one of his [Purlee's] legs or possibly by the chair.

A. By the chair, sir.

\* \* \* \* \* \*

Q. Had you looked inside the van where the gun was later found, could you have seen it?

A. *Only by entering the van and leaning over the seat* to see it.

\* \* \* \* \* \*

Q. Looking down through the windshield you couldn't have seen it?

A. *Maybe if you were about ten feet tall* you might have been able to, but [a] normal height person, no, sir.

\* \* \* \* \* \*

Q. And that this gun was laying on the floor mat—

A. Yes, sir.

Q. —in plain view *when you got in a certain situation?*

A. Yes, sir.

Q. It was not covered up with any debris, paper, rags, or anything?

A. No, sir.

Q. You could clearly see it as you came in the door?

A. *You had to actually look over the passenger side seat,* yes, sir.

The emphasized language suggests that, far from being in plain view, the revolver was not discernible to an ordinary observer approaching the van and could be seen only from a single vantage point after entering the vehicle.

In present times, the unlawful use of firearms poses great danger to our citizens and law enforcement officers. This is particularly true in connection with the trafficking of drugs and with the increasing incidence of drive-by shootings in our cities. Our court of appeals has held that a weapon is concealed if it cannot be viewed by the ordinary observation of one approaching a vehicle.[4] That was the case here. We see no reason to abandon this test in favor of a test that would allow for additional danger to the public and law enforcement officers.

Accordingly, we hold that a weapon being carried in a vehicle is concealed within the meaning of the unlawful use statute whenever the weapon is (1) not readily and practically visible to a person approaching the vehicle under ordinary circumstances and (2) within easy reach of any of the vehicle's occupants and (3) if the weapon is a firearm, it is operational and loaded, or if not loaded, ammunition is within easy reach of any of the vehicle's occupants. Therefore, the evidence presented to the jury was sufficient to support the conclusion that the revolver was concealed.

### B.

Purlee also contends that he was "traveling in a continuous journey peaceably through this state," § 571.030.3, RSMo 1986, and that this special defense requires a reversal of his conviction on the weapon charge.

Purlee correctly points out that once the accused raises the defense that he is within one of the exempted classes designated in the statute, the State has the burden of proving he is not within the exemption. *Wilkerson,* 796 S.W.2d at 392–3. He then asserts that if the evidence was insufficient to submit the marijuana possession issue to the jury, "all facts lead to the conclusion that he was in fact traveling peaceably through the state." To Purlee's misfortune, however, the evidence presented was sufficient to submit Count I to the jury. We thus need to consider whether a

---

**4.** Other states have taken a similar approach, concluding generally that a concealed weapon is one that is not visible to an approaching person by ordinary observation under the existing circumstances. *See, e.g., State v. Pollock,* 600 So.2d 1313, 1314 (Fla.App.1992); *State v. McNary,* 100 Idaho 244, 596 P.2d 417, 420 (1979); *People v. Schuford,* 50 Ill.App.3d 408, 8 Ill.Dec. 493, 495, 365 N.E.2d 731, 733 (1977); *Smith v. State,* 18 Md.App. 612, 308 A.2d 442, 445 (1973); *State v. Gwinn,* 390 A.2d 479, 482 (Maine 1978); *People v. Kincade,* 61 Mich.App. 498, 233 N.W.2d 54, 57 (1975); *State v. Davis,* 15 Ohio App.3d 64, 64–65, 15 OBR 93, 94, 472 N.E.2d 751, 752 (1984).

traveler whose actions are unlawful is precluded from seeking sanctuary under the statutory exemption.

 Our concealed weapon exemption for peaceful travelers dates back to 1874. *State v. Mason*, 571 S.W.2d 246, 249 (Mo. banc 1978) (Finch, J., dissenting). Both the exemption and its qualifier have survived a number of reenactments and amendments over the last century. Although this Court has not previously had occasion to contemplate the definition of peaceable travel, we agree that at a minimum the statute should not be construed as a license to carry a concealed firearm during the commission of a felony or a breach of the peace. *Wilkerson*, 796 S.W.2d at 394; *State v. Cousins*, 131 Mo.App. 617, 110 S.W. 607, 608 (Mo. App.1908); *Miles*, 101 S.W. at 672; *see also State v. Murray*, 382 So.2d 1372, 1373–4 (Fla.App.1980); *Johnson v. State*, 571 S.W.2d 170, 172 (Tex.App.1978). Therefore, we hold that the travelers' exemption does not extend to persons traveling through this state during the commission of a felony or for any unlawful purpose.

 In this case, there was ample evidence from which reasonable jurors could have concluded that Purlee knowingly carried a concealed, loaded revolver within easy reach as he drove the van. Further, the evidence being sufficient to sustain the conviction of possession of more than 35 grams of marijuana, Purlee did not come within the statutory travelers' exemption. Accordingly, Purlee's second point is denied.

### IV.

As his third and final point, Purlee alleges that the trial court erred when it sustained the State's motion in limine and precluded him from introducing an information charging Mark Schmidt with possession and transportation of marijuana and a docket sheet recording his guilty plea to these offenses. Purlee now suggests that the excluded evidence was admissible either as a declaration against penal interest or as testimony at a prior proceeding, although he made no attempt to introduce it at trial.

 A ruling in limine is interlocutory only and is subject to change during the course of the trial. *State v. Evans*, 639 S.W.2d 820, 822 (Mo.1982). The motion in limine, in and of itself, preserves nothing for appeal. *State v. Gray*, 812 S.W.2d 935, 939 (Mo.App.1991). Accordingly, the proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proffered evidence is sustained, the proponent must then make an offer of proof. *State v. Arbuckle*, 816 S.W.2d 932, 938 (Mo.App.1991); *State v. Oliver*, 729 S.W.2d 560, 563 (Mo.App.1987); *State v. Smith*, 725 S.W.2d 631, 633 (Mo. App.1987).

 In reference to the attempt of a criminal defendant to introduce a declaration of another against the declarant's penal interest, this is especially true. Both *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and the Missouri cases decided under it, *State v. Blankenship*, 830 S.W.2d 1, 6–7 (Mo. banc 1992), and *State v. Turner*, 623 S.W.2d 4, 9 (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982), indicate that the question of whether these statements may be admitted is heavily fact-dependent. Only with a fully developed factual context can a trial judge make a ruling that requires the balancing of a number of relevancy, reliability, and other issues. Not wishing to limit our holding solely to this procedural issue, however, we have also reviewed this matter for plain error. We find that the trial court's ruling did not result in "a manifest injustice or miscarriage of justice" entitling Purlee to relief. *State v. Hadley*, 815 S.W.2d 422, 423 (Mo. banc 1991).

 For the same reasons, a full factual record developed by an actual offer of evidence and offer of proof is needed to determine whether or not the requirements for identity of issues and identity of parties are met to admit evidence under the prior testimony exception. Even without such an offer, however, all indications are that evidence of Schmidt's guilty plea would not be admissible under that exception.

First, Schmidt's plea of guilty is not testimony from a prior case. The plea is not

under oath and is not subject to cross-examination. The rationale for the prior reported testimony exception is that the cross-examination in the prior case will substitute for the absence of cross-examination in the present case.

Second, even if this could be treated as an offer of testimony from Schmidt's case, the exception requires that the evidence be offered on the same issue in both the prior case and the present case. This requirement is necessary if the cross-examination in the prior case is to be an adequate substitute for the absence of cross-examination in the present case. The identity of issues requirement is not met here because the issue in Schmidt's case was whether Schmidt had possession of the marijuana; the issue in the present case is whether Purlee had possession. Because joint possession is a viable alternative, these issues are not the same issues stated in differing ways; the issues in the two cases were clearly not the same.[5]

Purlee's third point is denied. The judgment is affirmed.

All concur.

---

5. Because Purlee has neither established that the proposed evidence was testimony nor arising from an identical issue, we do not address whether the State is an identical party in two separate criminal actions.