STATE of Missouri, Respondent,

v.

**Jack Lindell DENTON, Appellant.**

**Jack Lindell DENTON, Appellant,**

v.

STATE of Missouri, Respondent.

Nos. 17551, 18793.

Missouri Court of Appeals,
Southern District,
Division One.

March 22, 1994.

Motion for Rehearing and Transfer to
Supreme Court Denied
April 12, 1994.

Application to Transfer Denied
May 26, 1994.

Bradley S. Dede, Shaw, Howlett & Knappenberger, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

A jury found Jack L. Denton (Defendant) guilty of second degree murder, § 565.021.-1(1),[1] and assessed his punishment at 30 years' imprisonment. Defendant appeals from that judgment and conviction in No. 17551. Subsequently, Defendant filed a Rule 29.15[2] motion seeking postconviction relief. After an evidentiary hearing, the motion court entered findings of fact and conclusions of law denying the requested relief. Defendant appeals from that denial in No. 18793. The appeals have been consolidated, Rule 29.15(*l*), and will be separately addressed in this opinion.

### Appeal No. 17551

Excluding its formal portions, the information charged that on January 28, 1990, in Dent County, Defendant "knowingly, with the purpose of causing serious physical injury to Earnest James Stephens,[3] shot the said Earnest James Stephens with a .22 pistol, causing [him] to die therefrom."

■ Defendant claims the evidence was insufficient to support his conviction and that the trial court erred in admitting a photograph of the deceased in evidence. When the sufficiency of the evidence is challenged, the evidence and all reasonable inferences arising therefrom are viewed in a light most favorable to the verdict, and all contrary evidence and inferences are disregarded. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). We are not to weigh the evidence or determine the credibility of witnesses, but are to review the record only to determine whether there was sufficient evidence from which the jury could reasonably have found the defendant guilty beyond a reasonable doubt. *State v. Whittle*, 813 S.W.2d 336, 337 (Mo.App.1991).

Viewed in that manner, the following evidence was presented. Eunice Burkhardt last saw her son, Earnest James Stephens, alive on Friday, January 26, 1990, at the Anchor Bar. He was with Defendant. The next day she called her son at his home requesting that he fix a water line at her house. Accompanied by Defendant and Russ Cody, Stephens fixed the water line later that day. Burkhardt testified that her son was left-handed.

Rosella Dorris, Stephens' aunt, last saw him alive on Saturday night, January 27, at Laura's Bar in Salem, Missouri. He was playing pool with Defendant. Dorris agreed to give Stephens a ride home later that night, but he never appeared at the appointed time and place. She testified that Stephens and Defendant were friends.

Kathleen Sturgis, Stephens' "common-law" wife, testified that Stephens left their home Saturday evening with Rosella Dorris, Bill Stark, Russ Cody and Defendant. They went with Dorris to meet her date for the evening in Salem. Stephens had planned to watch the Super Bowl the next day at Cody's house. When Stephens did not return home on Sunday, Sturgis was not alarmed because she had always told him not to drive home after drinking.

Sturgis became alarmed by 6 a.m. Monday when Stephens had not returned home in time to leave for work. She went to Russ Cody's house and learned that he last saw Stephens on Saturday night with Defendant. Sturgis then contacted Defendant at his place of employment where he stated that he last saw Stephens Saturday night and that Stephens failed to pick him up to go watch the Super Bowl on Sunday.

Next, Sturgis went to the grocery store where she talked with Eunice Burkhardt and Rosella Dorris. Burkhardt suggested that Sturgis go check Stephens' truck to deter-

---

1. Statutory references are to RSMo 1986 unless otherwise indicated.

2. Rule references are to Missouri Rules of Court (1994) unless otherwise indicated.

3. In the transcript the decedent's name is spelled differently. In this opinion, we use his name as spelled in the information.

mine if the keys were in it. Upon returning home, Sturgis looked in Stephens' truck, which was parked in front of their house near the road. She found his body slumped over in the seat.

Glenn Wilson, the Dent County coroner, went to Stephens' home after receiving a call about the incident. He determined that Stephens died of a gunshot wound to the right temple. He observed a .22 caliber chrome automatic pistol lying on the floorboard of the truck.

Sheriff Clifford Jadwin arrived at the scene shortly after the coroner. He took possession of the weapon found in the truck, which weapon was later introduced in evidence as State's Exhibit 9. When the sheriff first examined the weapon, he found a live round in the barrel and one in the clip. He also observed that the pistol was on safety.

After learning that Defendant had been with Stephens on Saturday night, the sheriff contacted Defendant at work that afternoon. Defendant voluntarily came to the sheriff's office after getting off work. He first denied having any knowledge about Stephens' death. Later that evening he made a second statement, which was reduced to writing.[4] Summarized, Defendant's second statement relates that he and Stephens had been drinking Saturday night. Afterwards, while en route to Stephens' home, Stephens removed an automatic pistol from his pocket and began waving it around. As they approached Stephens' home, Stephens brought the gun up, fired it and slumped over. According to Defendant, he then grabbed the steering wheel and steered the truck into the driveway of Stephens' house. Upon stopping, Defendant picked the gun up, put it on safety and laid it back down. After doing so, Defendant said he then "got out of the truck and ran."

Richard Dickens testified that he was acquainted with Defendant. He stated that Defendant told him on January 25, 1990, that he had a chance to make $3,500 "to do some guy in." No name was mentioned, however.

Steve Neubauer, who lived next door to Defendant at the Tower Inn, was also ac-quainted with Defendant. Neubauer testified that he went to Defendant's apartment about 5 p.m. Saturday, January 27, 1990. Defendant asked Neubauer to go out that evening and have a few beers. Neubauer declined because he had to work that night, beginning at midnight. While in Defendant's apartment, Neubauer said Defendant showed him a .22 caliber chrome pistol. Neubauer identified the pistol introduced in evidence as the same one Defendant had shown him.

Later that evening Defendant called Neubauer from Laura's Lounge. He asked for the name of the snitch who put Neubauer in the penitentiary and said he would take care of him because he was "packed and loaded." Neubauer declined the offer. Still later, Defendant called Neubauer again and said he was thinking about shooting Stephens. Neubauer simply hung up the phone.

According to Neubauer, he saw Defendant the next day about noon when Defendant came to his apartment. He handed Neubauer a jacket with gloves in the pocket and told Neubauer to hang onto them because "the cops would be out looking for them." He stated that Stephens "got shot." He then said, "Steve, I'm all shaky and nervous because a friend of mine got shot. I shot him, and I need you to hang onto my jacket and gloves for me." Later, Neubauer reported this incident to Sheriff Jadwin.

■ Defendant challenges the trial court's denial of his motions for judgment of acquittal filed at the close of the State's case and at the close of all the evidence (Points I and II). Since Defendant presented evidence in his own behalf after the State rested, he waived any claim of error relating to the denial of his motion at the close of the State's case. *Purlee,* 839 S.W.2d at 587. Therefore, our review is limited to whether the motion for acquittal at the close of all the evidence should have been sustained. *Id.*

■ As we understand Defendant's argument, if Neubauer's testimony were disregarded, the evidence presented at trial would be insufficient for conviction. Defendant then argues that, for several reasons, no

4. Proper *Miranda* warnings were given to Defen-

dant, and he waived his right to remain silent.

reasonable juror could have believed Neubauer. First, Neubauer's testimony conflicted with the testimony of other State witnesses as to certain times Neubauer talked with Defendant on the Saturday evening in question. Second, Neubauer testified that he contacted the sheriff on February 6, whereas the sheriff stated that the contact was earlier. Third, Kimberly Smith, a defense witness, testified that Neubauer told her that he knew Defendant did not commit the crime. Fourth, Neubauer was a convicted felon and also rode in a biker gang with Stephens. Because the jury should have disbelieved Neubauer's testimony for these reasons, Defendant claims that "the verdict therefore rested upon legally insufficient evidence."

Defendant's argument overlooks cases like *State v. Nelson,* 818 S.W.2d 285 (Mo.App. 1991), holding that "[q]uestions of credibility of witnesses and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury." *Id.* at 288. Furthermore, it is within the jury's province to believe all, some or none of any witness's testimony in arriving at its verdict. *Id.* The testimony of a single witness may be sufficient to sustain a conviction even if the testimony is inconsistent. *State v. Newberry,* 605 S.W.2d 117, 121 (Mo.1980).

Applying these principles to the instant case, it is clear that the evidence was sufficient to support Defendant's conviction. Along with the other evidence, the jury was free to believe that Defendant admitted the killing of Stephens to Neubauer. Point denied.

In Defendant's third point, he complains of the admission of a photograph of Stephens taken at the morgue showing a bullet wound in his right temple. He argues that the photograph did not tend to prove any material element of the State's case and that any probative value the photograph may have had was outweighed by its prejudicial effect. However, the *Newberry* case makes clear:

"The trial courts have a wide discretion in determining the admissibility of photographs. *State v. Stevens,* 467 S.W.2d 10 (Mo.1971); *State v. Crow,* 486 S.W.2d 248 (Mo.1972); *State v. Duisen,* 428 S.W.2d 169 (Mo.1967). It has generally been held that even though a photograph may be inflammatory it is admissible if it tends to prove any material element of the State's case; this includes the issues of identity, condition and location of the body, nature or location of wounds, and the cause of death; and, generally, if the photograph corroborates the oral testimony of the state or refutes defense testimony it is admissible. *State v. Duisen,* 428 S.W.2d 169 (Mo.1967); *State v. McDaniel,* 336 Mo. 656, 80 S.W.2d 185 (1935); *State v. Stevens,* 467 S.W.2d 10 (Mo.1971); *State v. Crow,* 486 S.W.2d 248 (Mo.1972); *State v. Clark,* 494 S.W.2d 26 (Mo.1973). And a photo is not made inadmissible because the oral testimony may have described what is shown in the photo. *Stevens,* supra." *State v. Jackson,* 499 S.W.2d 467, 472[5–8] (Mo.1973).

605 S.W.2d at 122.

Here, the photograph established the victim's identity, showed the nature and location of the wound and corroborated the coroner's testimony. It also tended to refute Defendant's statement that Stephens shot himself, in that Stephens was left-handed and the wound was to his right temple. Therefore, Defendant has failed to demonstrate any abuse of trial court discretion. Point III has no merit.

*No. 18793*

In his fourth point, Defendant alleges that he received ineffective assistance of counsel because his trial attorney failed to call witnesses "who would have undermined the credibility of the State's witness: and he was unreliable and unworthy of belief." From his argument, we learn that Defendant identifies Steve Neubauer as the state witness who was unworthy of belief.

According to Defendant, his trial counsel should have called Jo Dawson, Gregory Horn, Patricia Hoy, John Hoy and Kimberly Smith. Had Defendant's trial counsel called upon Jo Dawson to testify, we fail to see how her testimony could have undermined Neubauer's credibility. Ms. Dawson testified at the motion hearing that she was the supervi-

sor of records and communications at the Kirkwood, Missouri, Police Department. Her testimony established only that the records of her employer indicated Gregory Horn was incarcerated in the Kirkwood jail on November 2, 1990. Defendant claims this establishes that his counsel could have located Horn and called him to testify at trial. As will become clear, *infra*, this claim is irrelevant.

As to the other witnesses, our review is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). The findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Id.*

A movant must establish that the attorney's failure to call a witness was something other than trial strategy to demonstrate ineffectiveness in failure to call a witness to testify. A decision not to call a witness is virtually unchallengeable. *Hanes v. State*, 825 S.W.2d 633, 636 (Mo.App.1992).

Our review of a claim of ineffective assistance of counsel focuses on (1) counsel's performance, and (2) if that performance is deficient, whether prejudice resulted from counsel's breach of duty. *Driscoll v. State*, 767 S.W.2d 5, 7 (Mo. banc 1989), *cert. denied*, 493 U.S. 874, 110 S.Ct. 210, 107 L.Ed.2d 163 (1989).

At the motion hearing, Defendant presented the testimony of the remaining witnesses mentioned earlier. Gregory Horn testified that he observed Stephens playing Russian roulette on at least two occasions. He stated that he went to Salem after Defendant's arrest, was asking questions and seeking assistance for Defendant. He stated that Sheriff Jadwin told him that, as sheriff, he (Jadwin) knew how to take care of things; that Horn should quit poking around and putting his nose where it didn't belong; and that, if Horn couldn't do that, he should get out of Salem. Like Jo Dawson, Horn failed to tes-

tify as to facts that would bear on Neubauer's credibility.

Patricia Hoy testified that Neubauer told her he knew Defendant could not have committed the crime. She further testified that she had observed Stephens playing Russian roulette a few months before he died. She was subpoenaed and present at trial but not called as a witness.

John Hoy testified only that he heard Neubauer tell his wife, Patricia Hoy, that Defendant was not responsible for Stephens' death.

Kimberly Smith testified as she did at the trial, i.e., that Neubauer told her that Defendant did not commit the crime. We fail to understand Defendant's allegation that Kimberly Smith should have been called as a witness when she was called and gave favorable testimony.

After this testimony, the motion court found that the decision by Defendant's trial counsel not to call Patricia and John Hoy as witnesses "was a matter of trial strategy as the testimony herein reflects that [both of Defendant's trial attorneys] were informed about the content of their prospective testimony and made an informed decision not to call them as witnesses for Movant at the trial." Continuing, the motion court found that any testimony by the Hoys as it related to the credibility of Neubauer "would have been merely cumulative as trial counsel, Pete Clark, attacked the credibility of Steven Neubauer through his cross examination of Neubauer and through the testimony of Kim Smith." Finally, the motion court found "[t]hat the testimony elicited by trial counsel for Movant from Kim Smith was adequately and sufficiently put forth by counsel to impeach the credibility of the State's witness Steven Neubauer, and the fact that the jury may have chosen to believe the State's witness is clearly within the jury's province."

Defendant was not prejudiced by counsel's failure to call John and Patricia Hoy since their testimony on Neubauer's credibility would have been cumulative after the testimony of Kimberly Smith. Failure to present cumulative testimony does not constitute ineffective assistance of counsel. *State v. Ivory*, 813 S.W.2d 102, 105 (Mo.App.

1991). Since Defendant has demonstrated no prejudice from trial counsel's failure to call the Hoys, he is not entitled to postconviction relief. *State v. Scott,* 829 S.W.2d 120, 123 (Mo.App.1992). The findings and conclusions of the motion court are not clearly erroneous. Point IV has no merit.[5]

In the remaining point, Defendant alleges that his trial counsel was ineffective by failing to object to Neubauer's testimony that Defendant said he was "packed and loaded" and was willing to take care of the snitch who sent Neubauer to prison. Defendant claims this testimony was evidence of a prior crime unrelated to the instant offense.

The motion court found that an objection to such testimony would have been unsuccessful "as the statement itself could be interpreted by the jury as evidence that Movant was possessed of a firearm by which the murder of Earnest Stephens could be committed."

Defendant makes no effort to argue that this finding is clearly erroneous and fails to demonstrate that, had counsel objected, the testimony would have been excluded. Because trial counsel is not required to ask for groundless relief, *State v. Vinson,* 800 S.W.2d 444, 448 (Mo. banc 1990), Point V fails.

The judgment of conviction in No. 17551 is affirmed. The order denying relief in No. 18793 is affirmed.

PARRISH, C.J., and SHRUM, J., concur.

---

**5.** Defendant's point complains only of failure to call witnesses to impeach Neubauer's credibility. We do not discuss the testimony elicited at the motion hearing concerning Stephens playing Russian roulette, because it has no bearing on Neubauer's credibility. Furthermore, Defendant's argument does not demonstrate how this testimony relates to the issue raised.