**STATE of Missouri, Plaintiff/Respondent,**

v.

**Nathaniel M. RICHARDSON,
Defendant/Appellant.**

**No. 65404.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 25, 1994.

Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Chief Judge.

A jury convicted defendant of unlawful use of a weapon, § 571.030.1(4) * and second degree assault, § 565.060. Defendant appeals. The State concedes defendant's second point and suggests that the case be reversed and remanded.

We reviewed defendant's remaining points to determine if a remand was proper. It is, and accordingly we reverse and remand.

Defendant raises three points. The State concedes that the trial court erred in overruling defendant's challenge for cause to a juror. The other two points relate to the sufficiency of the evidence and the cross examination of a defense witness.

## I. Background

On August 14, 1992, victim went to a Quick Shop in Louisiana, Missouri. As he pulled into the parking lot, he saw defendant "standing on the corner" of a truck, talking with someone. Defendant looked at victim and said something. Victim got out of his truck and asked defendant about what was said.

The two men began to argue. As the argument intensified, defendant threw a bottle on the ground. Then defendant said, "[i]f you want to fight, we'll fight," and pulled out a knife. Defendant moved towards victim, jabbed the knife toward him and said "I'll cut you. I'll cut you to pieces." While victim was moving backwards, defendant slapped him in the face.

Victim then grabbed a maul handle from the back of the truck. At that point, defendant said "I'm going to get a gun.... I'll shoot you all." Defendant ran toward his house which was about a half block from the Quick Shop.

At that time, victim went into the Quick Shop. He asked an employee to call the police. Victim then hid in the Quick Shop.

Defendant returned with a .12 gauge shotgun. He aimed the gun at a crowd of people and said that he was going to shoot everyone. He began to yell at the crowd, asking victim to step out so he could "blow him away." Also, he stated that if anyone wanted to take victim's side, he "had enough in his hand to take care of everybody."

A man approached defendant and tried to calm him down. Defendant poked him with the shotgun and told him to get out of his way or "he'd blow [him] away." Shortly thereafter, police sirens could be heard. Defendant fled the scene. The police found him in a field behind his house, drinking beer. The gun was never recovered.

---

* All statutory references are to RSMo 1986. This law has been modified. *See* § 571.030, RSMo Cum.Supp.1993. The provisions discussed in this opinion have not been changed.

## II. Sufficiency of Evidence

In his first point, defendant alleges the trial court erred in overruling his motion for judgment of acquittal on the unlawful use of a weapon charge. He argues the evidence was insufficient to submit the charge to the jury. Specifically, he contends that the State did not present any evidence that the gun was loaded and operational.

■ Section 571.030.1(4) states that one is guilty of unlawful use of a weapon if a person knowingly "exhibits, in the presence of one or more persons, any weapon *readily capable of lethal use* in an angry or threatening manner." (emphasis added). Defendant contends that the statute requires both a weapon and the weapon must be readily capable of lethal use. He argues that a weapon is not "readily capable of lethal use" unless it is loaded.

Our colleagues in both the Western and Southern Districts have rejected this argument. *State v. Geary*, 884 S.W.2d 41, 45 (Mo.App.S.D.1994); *State v. Luetjen*, 661 S.W.2d 845, 847 (Mo.App.W.D.1983).

Further, substantial circumstantial evidence was presented that the shotgun was loaded. Defendant made statements that he was going to "blow" victim away, he "had enough in his hand to take care of everybody," and he was "gonna shoot" everyone. *See Luetjen*, 661 S.W.2d at 847.

In support of his point, defendant relies on *State v. Luker*, 873 S.W.2d 316 (Mo.App.S.D. 1994) and *State v. Purlee*, 839 S.W.2d 584 (Mo. banc 1992). Specifically, he points to the statement in *Purlee* that the weapon must be a "functional lethal weapon." *Id.* at 590.

Although the *Purlee* opinion contains that statement, the issue before us was not before the supreme court in *Purlee*. In *Purlee*, the defendant made two arguments. First, that the weapon was not concealed; second, that he was traveling in a continuous journey peaceably through the state. *Purlee*, 839 S.W.2d at 589. Thus, the quoted statement may be dicta.

Further, we do not agree with defendant's argument. In both *Luker* and *Purlee*, the defendants were charged with carrying a concealed weapon under § 571.030.1(1). Carrying a concealed weapon is a different offense from exhibiting a lethal weapon. Non-functioning weapons are specifically exempt from the scope of § 571.030.1(1), carrying a concealed weapon. *See* § 571.030.3. No such provision exists for § 571.030.1(4), exhibiting a weapon. *Purlee* and *Luker* do not stand for the propositions cited by defendant. Point denied.

## III. Jury Selection

In his second point, defendant alleges, and the State concedes, that he was denied a fair and impartial jury because a juror never unequivocally stated that she would not draw an adverse inference if defendant did not testify. The juror sat on the jury which tried defendant.

During voir dire, the following occurred:

A. [Not the challenged juror]: I would prefer he spoke. I would personally prefer that before I made my decision, but if that's not possible I would make a good judgment call.

      *    \*    \*    \*    \*    \**

Q. Okay. Little hesitation.

A. Slight, yes.

Q. It might be a factor for you?

A. Could be a factor not having heard from him. I personally prefer hearing from him.

Q. Is there anybody else who feels as [the above juror]? [Challenged juror?]

A. [Challenged juror]: I feel the same way.

Q. But you prefer to hear directly from [defendant]?

A. Yes.

Q. What if you don't? What if at the end of all the State's evidence you still have a reasonable doubt in your mind as to whether he did this, they haven't proven to you beyond a reasonable doubt to your satisfaction that he did it but you haven't heard from him, you haven't heard from [defendant]? Could you vote not guilty?

**178**

A. I might have a problem with that.

The challenged juror was not questioned further. A similar factual situation occurred in *State v. Wacaser*, 794 S.W.2d 190, 191–194 (Mo. banc 1990). There, the supreme court ordered a new trial. We follow *Wacaser* and grant defendant's point.

## IV. Bias

We review defendant's third point because the issue may arise at retrial. Defendant contends the trial court abused its discretion in allowing the prosecuting attorney to cross-examine a defense witness about her husband's conviction. The questioning which defendant objects to went as follows:

Q. You know that I'm the Assistant Prosecutor of Pike County; is that correct?

A. Yes, I do.

Q. And I actually prosecuted your husband for an offense; didn't I?

MS. KELLY: Objection your Honor.

THE WITNESS: Yes, you did.

MS. KELLY: Can we approach?

THE COURT: Certainly.

(Counsel approached the bench and the following proceedings were had:)

MS. KELLY: Your Honor, I object to any involvement of her husband. It has nothing to do with this case and it's systematically trying to introduce that she's involved in criminal activities by association.

MR. BRANNON: Your Honor, whether I sent her husband to prison or not I believe goes directly to her credibility on the stand and her attitude towards the State.

THE COURT: I'm going to overrule the objection.

(The trial resumed as follows:)

Q. (BY Mr. Brannon) Are you aware that I did prosecute your husband for a criminal offense?

A. Yes.

Q. And several months ago he was sent to the penitentiary on that offense; is that correct?

A. Yes, he was.

Q. And were you aware that I was the one that handled that case?

A. Yes, I am.

Q. And was that for an assault with a dangerous weapon?

A. Yes.

The interest or bias of a witness is always relevant. *State v. Bounds*, 857 S.W.2d 474, 476 (Mo.App.E.D.1993); MAI–CR 3d 302.01. The scope of a cross-examination used to show bias is within the broad discretion of the trial court. *Bounds*, 857 S.W.2d at 476.

Here, the quoted testimony tended to show a possible bias of the witness against the prosecutor and State. It is within the trial court's discretion to permit the State to inquire into such areas on cross-examination. *See State v. Pease*, 133 S.W.2d 409, 413 (Mo. Div.2 1939). Point denied.

The trial court's judgment is reversed and the cause is remanded for a new trial.

CARL R. GAERTNER and AHRENS, JJ., concur.