

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED102606 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| v. | ) | 1411-CR00778-01 |
| | ) | |
| RANDY E. TWITTY, | ) | Honorable Richard K. Zerr |
| | ) | |
| Appellant. | ) | Filed:  May 10, 2016 |

Following a bench trial, Randy Twitty ("Defendant") now appeals the trial court's judgment finding Defendant guilty of acting in concert with another of possessing pseudoephedrine with the intent to process that chemical to create methamphetamine, in violation of Section 195.420.  The judgment of conviction is reversed and vacated.

## I.  BACKGROUND

On May 6, 2015, pursuant to the State's Substitute Information in Lieu of Indictment, Defendant was charged, in operable part, as follows:

> The Prosecuting Attorney of the County of St. Charles, State of Missouri, charge that the defendant, acting in concert with another, in violation of Sections 562.036, 562.041, and Section 195.420, RSMo, committed the class C felony of possession of a chemical with the intent to create a controlled substance, punishable upon conviction under Section 558.011 and 560.11, RSMo., in that on or about August 29, 2013, in the County of St. Charles, State of Missouri, the defendant knowingly possessed Pseudoephedrine with the intent to process that chemical to create Methamphetamine, a controlled substance.

The charges against Defendant arose from the succeeding events occurring on August 29, 2013. Detective Chris Taylor ("Det. Taylor") of the O'Fallon Police Department, in cooperation with the St. Charles County Regional Drug Task Force, was tasked with searching and investigating the National Precursor Log Exchange ("NPLEX") for suspicious or unusual pseudoephedrine purchases. On that date, upon reviewing the NPLEX, Det. Taylor identified a purchase of pseudoephedrine by Debra Galebach ("Galebach") occurring on August 29, 2013; this purchase apparently roused Det. Taylor's suspicions due to this purchase being Galebach's fourth purchase of pseudoephedrine in the past 38 days.

After securing Galebach's residential address, Det. Taylor, accompanied by Detective Charles Niel ("Det. Niel") and Detective Daniel Plumb ("Det. Plumb"), traveled to Galebach's residence. Dets. Taylor and Plumb knocked on the front door of the residence, while Det. Niel peered into the residence through a different glass door. Upon knocking, a male voice responded, without opening the front door, and stated that his name was "Bobby." "Bobby" informed the detectives that he needed to secure his dog before opening the front door. As Dets. Taylor and Plumb waited for the male occupant, Det. Niel—again, observing the residence, presumably undetected by the male occupant—witnessed the male occupant shred certain boxes and deposit the resulting minced boxes into the trash.

Approximately one minute after knocking, the male occupant opened the front door. After a brief discussion, the male occupant consented to the entrance, upon which the male occupant informed the detectives that his real name was Randy Twitty ("Defendant"). Subsequently, during a search of the residence, the detectives retrieved from the trash two empty pill boxes and their corresponding blister packs of sinus medicine ("Wal-Phed") which contains

2

pseudoephedrine.[1] The detectives also discovered two separate receipts for the purchases of the two boxes of Wal-Phed, both dated August 29, 2013, along with two plastic bags, purportedly provided to Defendant by the stores where the Wal-Phed were purchased. Additionally, the detectives located a "pipe" which Det. Taylor testified was related to smoking marijuana, not for the consumption of methamphetamine.

Thereafter, Defendant was provided his *Miranda* rights, both orally and in writing. The detectives proceeded to interview, but not arrest, Defendant. During the interview, Defendant confessed that he and Galebach purchased the pseudoephedrine and removed each tablet; Defendant then traveled with the pseudoephedrine to a location away from the residence, and traded the "40 pills for a quarter gram of methamphetamine and $50." Defendant informed the detectives that he smoked the methamphetamine before returning to the residence. However, Defendant refused to provide the name or names of the individual on the other side of this transaction.

Following a bench trial, on January 20, 2015, Defendant was found guilty and sentenced to five years' imprisonment. This appeal now follows.

## II. DISCUSSION

In Defendant's sole point on appeal, Defendant contends that the State presented insufficient evidence that he "possessed" a controlled substance (i.e., pseudoephedrine) because said controlled substance was not discovered at the time the police searched Defendant's apartment or arrested Defendant; in fact, at all times relevant herein, no controlled substance was ever uncovered by the police. We agree.

---

[1] It is uncontested that each pill box, if unopened and unused, consists of 20 pills, each pill containing 120 milligrams of pseudoephedrine.

*Standard of Review*

On a challenge to the sufficiency of the evidence, this court determines only whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. State v. Letica, 356 S.W.3d 157, 166 (Mo. banc 2011); State v. Scholl, 114 S.W.3d 304, 307 (Mo. App. E.D. 2003). Our review is performed in the light most favorable the verdict, ignoring all contrary evidence and inferences. State v. Stout, 958 S.W.2d 32, 33-34 (Mo. App. E.D. 1997); see also State v. Latall, 271 S.W.3d 561, 566 (Mo. banc 2008). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011).

*Analysis*

Defendant was charged with acting in concert with another of possession of pseudoephedrine with the intent to process that chemical to create methamphetamine under Section 195.420, which reads in pertinent part:

> It is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400, or reagents, or solvents, or any other chemicals proven to be precursor ingredients of methamphetamine or amphetamine . . . with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter that chemical to create a controlled substance or a controlled substance analogue in violation of sections 195.005 to 195.425.

See Section 195.420.1. "Pseudoephedrine, its salts, optical isomers, and salts of optical isomers" is listed as a chemical in Section 195.400.2(20).

Pursuant to Section 195.010, "possessed" or "possessing a controlled substance" is defined as follows:

4

a person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

Section 195.010(34).

As charged and submitted to the trier-of-fact, on the theory of accomplice liability, to convict Defendant of possession of pseudoephedrine with the intent to process that controlled substance into methamphetamine, the State shouldered the burden to prove each element of the charged offense beyond a reasonable doubt. State v. Hall, 56 S.W.3d 475, 478 (Mo. App. W.D. 2001) ("To convict a defendant of a criminal offense, the State is required, as a matter of due process, to prove beyond a reasonable doubt each and every element of the offense charged."). Thus, the State was required to prove the following elements:

(1) Defendant or another individual, acting in concert, possessed pseudoephedrine,
(2) aware of the presence and nature of the pseudoephedrine,
(3) with the intent to process said pseudoephedrine to create methamphetamine.

See, e.g., State v. Beggs, 186 S.W.3d 306, 313 (Mo. App. W.D. 2005).

To prove the element of "possession" of a controlled substance, the State was required to establish "[1] conscious and intentional possession of the substance, either actual or constructive, and [2] awareness of the presence and nature of the substance." State v. Stover, 388 S.W.3d 138, 146-47 (Mo. banc 2012). Both elements—possession and knowledge—may be proven with circumstantial evidence. State v. Purlee, 839 S.W.2d 584, 587 (Mo. banc 1992).

Uncomplicatedly, a person is adjudged to have "actual possession" if the substance is on his or her person or within easy reach and convenient control. State v. Johnson, 81 S.W.3d 212,

5

215 (Mo. App. S.D. 2002); see also Section 195.010(34) ("A person has actual possession if he has the substance on his person or within easy reach and convenient control.").

Conversely, "constructive possession" poses a more entangled analysis, in that the two elements of possession and knowledge are commingled and intersect. Purlee, 839 S.W.2d at 588 ("The two prongs of this test are not entirely independent."). Consequently, "[a]bsent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the *presence* of the controlled substance." Id. (emphasis added); State v. Powell, 973 S.W.2d 556, 558 (Mo. App. W.D. 1998) ("The State is not required to show actual, physical possession of the substance to establish possession, but may show constructive possession by circumstantial evidence."). Therefore, "constructive possession" is established "where a person has the power and intention *at a given time to exercise dominion or control* over the substance either directly or through another person or persons." State v. Booth, 11 S.W.3d 887, 891 (Mo. App. S.D. 2000) (emphasis added); see also Section 195.010(34). Generally, if "actual possession" is absent, the State is pressed to satisfy its burden via "constructive possession" with other facts that buttress the inference of possession. State v. Metcalf, 182 S.W.3d 272, 275 (Mo. App. E.D. 2006).

Here, it is undisputed that the police did not find pseudoephedrine in Defendant's apartment or on Defendant's person. Rather, upon a search of Defendant's apartment, the police merely found the following: (1) two empty pill boxes and their corresponding blister packs of Wal-Phed that contains pseudoephedrine; (2) two separate receipts for two separate transactions, both occurring on August 29, 2013, evidencing the purchases of the two boxes of Wal-Phed; and (3) two plastic bags, purportedly provided to Defendant by the stores where the Wal-Phed were purchased.

6

Moreover, although no controlled substance was discovered, neither party disputes that upon Defendant's valid waiver of his *Miranda* rights, Defendant admitted the following to the police: (1) on August 29, 2013, Defendant, with the assistance of Galebach, purchased two Wal-Phed boxes and removed the pills therefrom; (2) thereafter, Defendant transported the pills removed from the Wal-Phed boxes to a location away from his apartment; (3) at that location, Defendant exchanged the 40 pills for one-quarter of a gram of methamphetamine and 50 dollars;[2] and (4) Defendant smoked the bartered-methamphetamine before returning to his apartment. Defendant, however, never provided, and the police never discovered the individual with whom Defendant entered into this transaction.

The Defendant and the State dispute whether Defendant "possessed" a controlled substance. Defendant's argument is two-fold: first, there exists insufficient evidence to convict Defendant of "actual possession" of a controlled substance because, at the time of arrest, Defendant did not hold a controlled substance on his person or within his easy reach and convenient control; and second, there exists insufficient evidence to convict Defendant of "constructive possession" of a controlled substance because, at the time of arrest, Defendant lacked both the power and intention to exercise dominion or control over the controlled substance either directly or through another person or persons—the Wal-Phed had already been traded and there exists no evidence, direct or circumstantial, Defendant had the power or intention to retrieve or control the same.

The State's argument is singular: sufficient evidence exists so as to convict Defendant of "actual possession" of a controlled substance because Defendant voluntarily admitted that he possessed a controlled substance just mere hours before Defendant was arrested. This admission

---

[2] Defendant also admitted that, within the past month, he and Galebach had "approximately three times previously" purchased pseudoephedrine for purposes of trading.

of possession was corroborated by the discovery of two empty Wal-Phed boxes and their corresponding blister packs, two receipts substantiating the purchases of these two boxes of Wal-Phed, two plastic bags allegedly employed by Defendant to tow the two Wal-Phed boxes from the stores, and Defendant's surreptitious conduct (i.e., giving a false name to the police, acting as if Defendant needed to cage his dog where there, in fact, was no dog, and Defendant's destruction of two Wal-Phed boxes).

To appreciate this dispute, certainly, one need not look further than the fact that Defendant was charged with "possession" of a controlled substance, despite the circumstances that Defendant apparently lacked dominion or control over a controlled substance at the time of arrest and a controlled substance was never found. Moreover, but for Defendant's admission, there is no evidence corroborating Defendant's mysterious, unnamed, unexposed cohort who allegedly intended to use the pseudoephedrine to process methamphetamine.

Under Missouri law, we find there was insufficient evidence to convict Defendant of "actual possession" or "constructive possession." Sustaining Defendant's conviction premised upon "actual possession" would run afoul of the statute's unambiguous language—that is, "[a] person has actual possession if he *has the substance on his person or within easy reach and convenient control*." Section 195.010(34) (emphasis added). Similarly, affirming Defendant's conviction under "constructive possession" would drastically broaden those circumstances sufficient to find "constructive possession."

The facts of this case have, indeed, produced an anomalous scenario wherein Defendant cannot be found guilty under Section 195.420 as so charged by the State. In effect, to affirm Defendant's conviction, this court would be required to fuse the statutory definitions of actual and constructive possession so as to create a third category of possession. This third category of

8

possession would be one in which "constructive possession" encompasses "actual possession" (i.e., Defendant's conviction would be upheld for *past* actual possession under the theory of constructive possession). However, the statute as written, prescribes two separate and distinct categories of possession, neither of which fully encompasses the other. In accordance with our Missouri Constitution, we cannot usurp the duties of our Legislature and judicially create this third category. Accordingly, Defendant's sole point on appeal is granted and the judgment of conviction vacated.

This court does not vacate Defendant's conviction lightly. However, the prosecutor was not without the means to secure Defendant's conviction and incarceration.

## III. CONCLUSION

For the foregoing reasons, the trial court's judgment and conviction is reversed and vacated.

_____
Lisa P. Page, Judge

Sherri B. Sullivan, P.J. and
Kurt S. Odenwald, J., concur.

9