**STATE of Missouri, Plaintiff–Respondent,**

v.

**Donald G. ZIMMERMAN, Defendant–Appellant.**

No. 26629.

Missouri Court of Appeals, Southern District, Division One.

Aug. 22, 2005.

1. Whether Appellant set forth a meritorious    defense is not an issue here.

195

Robert D. McGee, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Donald G. Zimmerman (defendant) was convicted, following a trial before the court without a jury, of attempting to manufacture or produce methamphetamine, a controlled substance.[1] § 195.211.1.[2] He was tried as, found to be, and sentenced as a persistent offender. *See* § 558.016. Defendant appeals contending the evidence was not sufficient for the trial court to have found him guilty. This court affirms.

The same standard of review applies in criminal cases tried by the court without a jury as in cases tried by jury. *State v.*

---

1. Defendant was also charged with possession of methamphetamine, a controlled substance. § 195.202. He was acquitted of that charge.

2. References to statutes are to RSMo 2000.

*Mayfield*, 83 S.W.3d 103, 104 (Mo.App. 2002).

> We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored. [*State v. Pollard*, 941 S.W.2d 831, 833 (Mo.App.1997).] We determine whether there was sufficient evidence from which a trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Phillips*, 940 S.W.2d 512, 520 (Mo.banc 1997). Moreover, this Court does not weigh the evidence or determine the reliability or credibility of witnesses. *State v. Frappier*, 941 S.W.2d 859, 861 (Mo.App.1997).

*State v. Matney*, 979 S.W.2d 225, 226 (Mo. App.1998). *See also State v. McCarty*, 956 S.W.2d 365, 367–68 (Mo.App.1997). The evidence, considered in that light, is as follows.

Deputy sheriffs were dispatched to a residence rented by defendant based on an anonymous tip that methamphetamine was being manufactured. One of the deputies knocked on the back door at the house. Defendant answered the door. He was asked if he was the owner of the house. He said he was. Defendant gave permission to search the house.

When the deputies entered the house, they smelled a strong chemical odor. One of the deputies described the odor as one he associated, based on training and experience, "with that of a red-phosphorus-iodine-crystal methamphetamine lab." He added, "It was a—in my opinion, a pungent odor. It's not something that you can easily explain, but it's something, once you've been there, you recognize. . . . It may not be easy to describe, but once you know that smell, you associate that smell with those types of chemicals."

They found several pipes, a white substance and cold medication in the kitchen area that one of the deputies characterized, based on his training and experience, as items consistent with the manufacture of methamphetamine. A further search of the kitchen revealed a plate above the stove with a white powder on it, pseudoephedrine tablets, empty pseudoephedrine blister packs in the trash, a glass flask, Coleman fuel, acetone, and muriatic acid.

In another room, a deputy found pseudoephedrine tablets, plastic bottles with multi-layered substances in them, which included a liquid and a pasty or powdery substance, stained coffee filters, three bottles of Heet, an electric PH tester, iodine crystals, Red Devil lye, and latex gloves. The deputy who searched the room noted that a coffee filter he found was stained by what, in his experience, was red phosphorus and iodine crystals. He explained that red phosphorus and iodine are "used in the methamphetamine process." He was asked the following questions and gave the following answers concerning other items:

> Q. Let's talk about the Heet that's depicted in [a photograph admitted in evidence]. What is the significance of Heet, based on your training and experience?
>
> A. Based on my training and experience, we commonly find Heet used in these laboratories. When they crush the pills, they'll soak the pills in Heet, and it helps separate the ephedrine.
>
> Q. So, is Heet a component in the manufacturing process?
>
> A. Yes, sir.

The deputy described other items found as items used in the manufacture of methamphetamine.

Defendant testified at trial. He said he rented the house where the items were found; that he had access to and control over all the rooms in the house. He

stayed at the house the night before the search and had been at the house all day before the officers arrived. He said he had been doing laundry and picking up around the house. He used the house when he was not at other locations where he worked and on weekends.[3]

Two other men were at the house when the deputies arrived. Defendant said they just happened to show up and he let them in the house and socialized with them. He said the other two men did not live at the house.

Defendant contends the trial court erred in overruling his motion for acquittal at the close of the state's evidence and in finding him guilty of attempting to manufacture or produce methamphetamine, a controlled substance, because the evidence was not sufficient for a reasonable trier of fact to find him guilty. His argument includes that there was not a sufficient showing that he had possession of the items that were capable of use in producing methamphetamine since other persons were present at his house. He places significant reliance on *State v. Mickle,* 164 S.W.3d 33 (Mo.App.2005), regarding the argument that the presence of other people at his residence detracts from a showing that he possessed and controlled the items found at his house.

*Mickle* is not helpful to defendant. *Mickle* is an automobile case in which the court affirmed the conviction of a passenger in the automobile of attempt to manufacture methamphetamine. The court held the evidence was sufficient to find the automobile passenger constructively possessed methamphetamine related items so that the passenger was guilty of attempting to manufacture methamphetamine. *Mickle* differs from this case in many re-spects, including that it was an automobile case rather than a stationary residence.

■ Here, the evidence was that the house where the items were found that were capable of use to manufacture methamphetamine was defendant's residence. He shared it with no one although two other persons were present at the time law enforcement officers seized the items on which defendant's conviction was based. Defendant had been at the house the entire day before he was arrested and the items were seized. He had access to the entire house. The other persons present had arrived only a short time before law enforcement officers came to the house.

Section 564.011.1 is applicable to determine what constitutes an attempt to commit a crime. *State v. Withrow,* 8 S.W.3d 75, 78 (Mo. banc 1999). It provides:

> A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "**substantial step**" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

"To prove that [a defendant] engaged in a substantial step through the possession of materials used to manufacture methamphetamine, this court applies 'the same standard of actual or constructive possession in manufacturing cases as is used in possession cases.'" *State v. Farris,* 125 S.W.3d 382, 387 (Mo.App.2004), *citing State v. Rollett,* 80 S.W.3d 514, 521 (Mo. App.2002). This is shown by establishing (1) that the defendant "had 'conscious and intentional possession of the substance, either actual or constructive,'" and (2) that the defendant "was aware of 'the presence

---

**3.** Defendant told the court he was employed by a company that built sunrooms and that

his job required him to work at locations away from his home.

**198**

and nature of the substance.'" *Id., quoting State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). Both elements may be proved by circumstantial evidence.

Defendant's sole occupancy of the house, notwithstanding that two visitors were present at the time the items used to produce methamphetamine were seized, was sufficient to prove his possession of those items. There was sufficient evidence for the finder of fact to find that defendant had exclusive possession of the house and that everything in it was within his easy reach and control.

■ Conduct that is corroborative of an actor's criminal purpose includes "possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances," and "possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances." *State v. Molasky,* 765 S.W.2d 597, 601 (Mo. banc 1989).

■ Defendant possessed items within his house, primarily in the kitchen area, that are commonly used to manufacture or produce methamphetamine. These were items that, each standing alone, might have questionable value for the purpose of ascertaining a possessor's knowledge that the nature of their use was to manufacture or produce methamphetamine. However, the presence of all the items was corroborative that their purpose was to manufacture or produce methamphetamine, thereby constituting a substantial step toward the manufacture or production of methamphetamine. In addition to the presence of substances used to manufacture or produce methamphetamine, a glass flask was present that was identified as a device commonly found in methamphetamine labs to separate chemicals. Further, the strong odor that permeated defendant's house, consistent with a red-phosphorus-iodine crystal methamphetamine lab, was corroborative of defendant's knowledge of the nature of the materials and illustrative of a substantial step having been taken to manufacture or produce methamphetamine. Defendant's points on appeal are denied. The judgment of conviction is affirmed.

PREWITT, P.J., and RAHMEYER, J., concur.