**STATE of Missouri, Respondent,**

v.

**Shane M. ANDERSON, Appellant.**

**No. ED 97522.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 20, 2012.

Alexa Irene Pearson, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., Jennifer A. Wideman, Asst. Atty. Gen., Jefferson City, MO, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

The defendant, Shane M. Anderson, appeals the judgment entered upon a jury verdict finding him guilty of felony possession of cocaine and misdemeanor possession of marijuana. Defendant challenges the sufficiency of the evidence to support his conviction of cocaine possession. He does not challenge his conviction for possession of marijuana, which we affirm. Because the State presented insufficient evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that defendant had knowledge of the presence of the cocaine, we reverse that conviction.

### Factual and Procedural Background

One day during the summer of 2010, defendant was in the hotel room he rented at the Hannibal Inn. Defendant's nephew was also present in the hotel room. Meanwhile, Officer Jonathan Borgmeyer of the Hannibal Police Department received an anonymous tip that there was a party occurring in Room 133 of the hotel. The tipster reported the smell of marijuana emanating from the room. Officer Borgmeyer responded to the hotel. As he approached the room, he observed the curtain in the window move to the side. He did not smell any marijuana or cocaine. He knocked on the door, and the defendant answered. Officer Borgmeyer introduced himself and asked if he could speak with defendant. Defendant agreed and invited the officer into the room. Officer Borgmeyer advised the defendant that he had received a call about a party and the smell of marijuana coming from the room, and asked defendant for permission to search the room. Defendant consented.

According to Officer Borgmeyer, the layout of defendant's hotel room was that of a common, ordinary hotel room. Upon entering the room, Officer Borgmeyer could see two beds to his right. A nightstand stood in between the beds. Beyond the second bed was a wall, behind which was a bathroom. A counter with a sink was adjacent to the bathroom, on the back wall of the room, straight back from the room door. A shelf was affixed to the wall to the left of the counter and sink. Officer Borgmeyer began his search by walking to the back of the room. There he first found a digital scale on the countertop by the sink. A knife and scissors were next to the scale. Officer Borgmeyer then found a grinder sitting on top of the microwave, which was sitting on the counter. A green leafy substance was present on the scale as well as in the grinder. Officer Borgmeyer believed the substance to be marijuana.

Officer Borgmeyer returned to the front of the room to talk with the defendant. Defendant commented that he smoked a little bit of marijuana, but that he did not do anything else. Officer Borgmeyer asked defendant if he was the only one who lived in the room. Defendant responded that he was, and advised that his nephew was visiting for only a few hours. Officer Borgmeyer placed defendant under arrest, handcuffed him, and left him in the middle of the hotel room, in the custody of Officer Kuhn, who had just arrived on the scene.

Officer Borgmeyer retrieved evidence bags and a digital camera from his car, and then returned to continue his search of the room. He located a second digital

scale on the shelf near the microwave and countertop. A green leafy substance was also present on this scale. As before, Officer Borgmeyer believed that the substance was marijuana. Lastly, Officer Borgmeyer found a small translucent plastic straw on the floor by the nightstand, which was between the two beds. The straw was short, about two or three inches in length, and was lying amidst cords on the floor, between the nightstand and the bed closest to the door. Officer Borgmeyer picked up the straw, looked inside, and saw a small amount of a white powdery substance inside the straw. He did not see anything else on the floor by the straw, except for the cords. By the end of his search, Officer Borgmeyer had discovered a grinder and two scales, which were located near each other towards the back of the room, and the plastic straw that was located on the floor between the nightstand and bed. Officer Borgmeyer did not ask defendant about any items he found, and he did not show any of the items to defendant while they were still at the hotel room. Officer Borgmeyer did not question defendant's nephew about any of the items, did not search him, and allowed him to leave.

The officers transported defendant to the police station. Once there, defendant made another remark. According to Officer Borgmeyer, defendant stated: "I don't want to put anything down in case I have to fight this, but there's not much to explain, it's mine." Officer Kuhn recalled defendant saying something to the effect that "everything there was his and it belonged to him." Officer Kuhn also heard Officer Borgmeyer ask defendant if the straw was his, and the defendant responded that he had never seen it before. The

State adduced few details of events at the station. Officer Borgmeyer testified only that at the time of defendant's statement, the two scales, the grinder, and the straw were on a counter, and that the defendant was with the officers, within "earshot."

A criminalist at the Missouri State Highway Patrol Crime Lab tested the seized evidence. She determined that the leafy substance was a minute amount of marijuana, weighing two one-hundredths (0.02) of a gram. She determined that the powdery substance on the straw was an indeterminate amount of cocaine. The powdery substance was observable but not weighable.

The State charged defendant with one count of felony possession of a controlled substance (cocaine) and one count of misdemeanor possession of up to 35 grams of marijuana, both in violation of Section 195.202. The case proceeded to trial, and the jury found defendant guilty on both counts. The trial court sentenced defendant as a prior and persistent offender to a term of eight years' imprisonment for possession of cocaine, and a concurrent term of one year in jail for the marijuana possession. Defendant appeals, alleging the trial court erred in overruling his motion for judgment of acquittal and in entering judgment and sentence for cocaine possession. Defendant contends the State failed to present sufficient evidence to prove that he possessed cocaine.[1]

### Standard of Review

▮▮▮ "When a criminal defendant challenges the sufficiency of the evidence to support a conviction, this Court's review is

1. In all, defendant raises three points on appeal. Because we find his claim of error challenging the sufficiency of the evidence dispositive, we need not address his remaining points, which claim error in the trial court's denial of defendant's motion to suppress statements and in the trial court's denial of defendant's motion for mistrial after jurors observed defendant wearing shackles.

limited to determining whether the State introduced sufficient evidence at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Bateman*, 318 S.W.3d 681, 686–87 (Mo. banc 2010). In making this determination, we accept as true all evidence favorable to the verdict, including all favorable inferences drawn from the evidence. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001)(internal quotation omitted); *Bateman*, 318 S.W.3d at 687. We disregard all inferences contrary to the verdict, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. *Whalen*, 49 S.W.3d at 184 (internal quotation omitted). We may not supply missing evidence or give the State the benefit of unreasonable, speculative or forced inferences. *Id.*

### Discussion

Section 195.202 prohibits a person from possessing or having under his or her control a controlled substance. To sustain a conviction for possession of a controlled substance, the State must prove the following two elements: (1) conscious and intentional possession of the substance, either actual or constructive; and (2) awareness of the presence and nature of the substance. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992); *State v. Tomes*, 329 S.W.3d 400, 403 (Mo.App. E.D. 2010). The possession prong and the knowledge prong are not entirely independent, in that both require proof of the defendant's knowledge of the presence of the controlled substance. *Purlee*, 839 S.W.2d at 588; *State v. Gonzalez*, 235 S.W.3d 20, 26 (Mo.App. S.D.2007). In-

deed, the test for possession is whether the defendant "was aware of the presence and character of the particular substance, and was intentionally and consciously in possession of it." *State v. Young*, 427 S.W.2d 510, 513 (Mo.1968)(internal quotation omitted); *State v. Cortez–Figueroa*, 855 S.W.2d 431, 440 (Mo.App. W.D.1993). "Possession without knowledge of such possession is not possession in the legal sense of that word." *State v. Burns*, 457 S.W.2d 721, 724 (Mo.1970). As a matter of fact, our Missouri Supreme Court once noted that "no case has been found in which the defendant's conviction of illegal possession of narcotics has been sustained where the prosecution has failed to prove, either directly or by inference, that the defendant had knowledge of the presence of the contraband substance." *Id.* at 725.

For the reasons that follow, we conclude that the State presented insufficient evidence to prove that defendant had knowledge of the presence of the cocaine. We recognize that knowledge is often not susceptible of direct proof. *Gonzalez*, 235 S.W.3d at 27. But then, a criminal conviction cannot be based upon probabilities and speculation. *Id.* A defendant's knowledge of a controlled substance may be reasonably inferred from the defendant's actual possession of that substance. *Id.* at 26. "Absent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." [2] *Purlee*, 839 S.W.2d at 588. At a minimum, constructive possession requires evidence that defendant had access to and control over the premises where the substance was found. *Id.* Defendant's exclusive control of the premises where the substance is found is

---

**2.** A person is in constructive possession of the substance if he "has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons." Section 195.010(34).

sufficient evidence to infer possession and control. *Id.* But in cases where the premises are jointly controlled, further evidence is required connecting the defendant with the controlled substance before it can be said that he possessed the substance. *Id.* "The State must present some incriminating circumstance that implies that the accused knew of the presence of the drugs and that the same were under his control." *Id.* Additional incriminating circumstances that will support an inference of knowledge and control include: the defendant's easy accessibility or routine access to the items; the defendant's close proximity to the items in plain view of the police; finding defendant's personal belongings with the items; the presence of large quantities of drugs at the scene where the defendant is arrested; the odor of drugs, or the presence of a chemical odor; admissions by the defendant; and conduct by defendant indicating a consciousness of guilt such as making false statements in an attempt to deceive the police, nervousness during the search, and flight from law enforcement. *State v. Moses,* 265 S.W.3d 863, 866 (Mo.App. E.D.2008); *see also State v. Woods,* 284 S.W.3d 630, 640 (Mo. App. W.D.2009). In determining whether the evidence of additional incriminating circumstances sufficiently supports an inference of knowledge and control, we assess each case on its own facts, and consider the totality of the circumstances. *Moses,* 265 S.W.3d at 866.

The parties agree this is a joint-control, constructive possession case. The State presented no evidence that defendant had actual possession of the cocaine. Officer Borgmeyer did not find the cocaine on defendant's person, and the State presented no evidence that Officer Borgmeyer found the cocaine in defendant's immediate vicinity.[3] The State also presented no evidence of defendant's exclusive control of the room. Although the defendant was the only one living in the hotel room, the State presented no evidence that this excluded entry by hotel staff. To connect defendant with the cocaine and prove his possession of that substance, the State relied on the following evidence: (1) the straw containing the cocaine was found in defendant's hotel room; (2) defendant's statement "it's mine;" and (3) the presence of the marijuana, grinder, and scales in defendant's room. We find this insufficient.

The State's evidence of incriminating circumstances supporting an inference of defendant's knowledge and control is either vague and ambiguous or simply absent. Although police found a straw with cocaine on the floor of defendant's hotel room, none of defendant's belongings were found close to or comingled with the straw. The police did not find large quantities of drugs. The State presented no evidence of any other cocaine-related items found in the room. Officer Borgmeyer specifically testified that he found no baggies of cocaine or tinfoils in the room. He did not detect the odor of drugs. Further, although defendant acknowledged that he alone rented the room, the State presented no evidence as to how long defendant had done so, for the jury to reasonably infer that defendant must have known of everything in the room, or that all within the room belonged to defendant, rather than some prior occupant. Furthermore, defendant was not alone in the room at the time of the search. Defendant's conduct also belies any knowledge on his part that he possessed cocaine. He did not try to flee or otherwise evade the police. Rather, he answered the door, invited Officer

---

**3.** A person has actual possession "if he has the substance on his person or within easy reach and convenient control." Section 195.010(34).

Borgmeyer inside, and consented to search of the room. The State presented no evidence that defendant was nervous or that he gave false information, both indicators of a guilty conscience. To the contrary, defendant confessed to using marijuana. He denied using anything else. The State also presented no evidence that defendant had recently used drugs or that he appeared under the influence of drugs at the time of his arrest. *See State v. Smith*, 808 S.W.2d 24 (Mo.App. E.D.1991)(holding defendant's statements that he recently used cocaine and that he was coming down from a high indicated that he was aware of the presence and character of the cocaine residue found on a syringe on defendant's person).

Defendant's statement—"it's mine"—is insufficient to show defendant's knowledge of the presence of cocaine. To reach such a conclusion, a juror would have to draw multiple inferences. To begin, a juror would have to infer that the defendant saw the straw when he made the statement. But the State presented scant and vague evidence from which to draw such an inference. The State presented no evidence that the defendant knew, while still at the hotel, that Officer Borgmeyer had seized the straw. The State presented no evidence that the defendant observed Officer Borgmeyer finding the straw. Officer Borgmeyer specifically testified that he did not show the seized items to the defendant while they were in the hotel room. Nor did the officer ask about the items while at the hotel. Then, as to events at the station and the circumstances surrounding defendant's statement, the State adduced only vague evidence. The State merely adduced that at the time defendant made his statement, the grinder, scales, and straw were on "a counter," and that the defendant was with the officers, within "earshot." The State presented no evidence showing defendant's location and

proximity to the seized items when he made his statement. A juror would have to infer that the defendant had seen, or was looking at the straw on the counter when he made his statement, and would have to further infer that in stating "it's mine," he was referring to the straw. In light of the record in this case, defendant's statement is ambiguous. It is unclear what defendant was referring to when he made his statement. We note that when specifically asked about the straw, defendant denied ever seeing it before. Even if a juror disbelieved defendant and concluded that defendant had confessed to owning the straw, the juror would then have to infer that defendant knew there was cocaine present inside that straw. There is a difference between confessing to owning the straw and knowing of the presence of drugs in that straw. The State at trial argued that you could see the powder inside the straw. Granted, "visibility of a drug is a factor that supports an inference that a defendant who saw the residue knew of its presence and nature." *State v. Moore*, 352 S.W.3d 392, 400 (Mo.App. E.D. 2011). However, we cannot determine from this record that the defendant even saw the straw, much less the powder in the straw. Only a very small amount of powder was located inside the straw, and the powder was located at only one end of the straw. To conclude that defendant saw, and thus knew of the cocaine's presence, a juror would have to infer that the defendant was shown that end of the straw, or that he was close enough to the straw to actually see the miniscule amount of cocaine located inside the tip of the straw. The State, however, presented insufficient evidence to support such an inference.

The State further argues that defendant's contemporaneous possession of the marijuana gives rise to the inference that defendant also knew of the presence and

nature of the cocaine. The State relies heavily upon the presence of the marijuana and the marijuana-related items to prove cocaine possession. Indeed, the prosecutor conceded in closing argument that if the marijuana, grinder, and scales were not found in the room, defense counsel would have "a little traction" on her argument that defendant had no knowledge about the straw. The prosecutor then emphatically implored the jury to use its common sense and convict the defendant of cocaine possession, arguing that there was "plenty" of evidence to infer defendant knew about the cocaine.

 We disagree. Again, a criminal conviction cannot be based upon probabilities and speculation. Unquestionably, Officer Borgmeyer found marijuana in defendant's hotel room, but the presence of marijuana does not itself support an inference that defendant had knowledge of the cocaine. In reviewing the sufficiency of the evidence, we analyze each of the counts against a defendant separately to determine whether sufficient evidence was presented to support that conviction. *Tomes,* 329 S.W.3d at 404; *State v. Bacon,* 156 S.W.3d 372, 377–80 (Mo.App. W.D. 2005). We acknowledge the general rule, relied upon by the State, holding that evidence of a defendant's contemporaneous possession of other drugs or paraphernalia is relevant and admissible to demonstrate defendant's knowing and intentional possession of the controlled substance underlying the charge, particularly when both drugs are found on the defendant at the same time. *See, e.g., State v. Dowell,* 25 S.W.3d 594, 603 (Mo.App. W.D.2000); *State v. Allen,* 856 S.W.2d 676, 677 (Mo. App. E.D.1993). But here, admissibility of the marijuana is not at issue, as in these other cases. Rather, the issue is whether the presence of the marijuana sufficiently shows that defendant knew about the min-

ute amount of cocaine on the straw. We conclude it does not. The marijuana and cocaine were found in distinctly different locations in the hotel room. The marijuana was found on scales and in a grinder located on a countertop and shelf at the back of the hotel room. The cocaine was found across the room, in a straw, on the floor, in between the bed and nightstand. Given the miniscule amount of cocaine, the defendant's ambiguous statement, and the lack of any other evidence connecting defendant to the cocaine, the mere presence of marijuana and marijuana-related paraphernalia in the room does not suffice to show defendant's knowledge of the cocaine's presence.

 In the end, the State proved that a straw with a small amount of cocaine was found in the defendant's hotel room. The State, however, failed to present sufficient evidence connecting defendant to that cocaine. Mere presence of the defendant on the premises where contraband is found is insufficient to show knowledgeable possession. *See State v. Hall,* 680 S.W.2d 179, 183 (Mo.App. W.D.1984). To conclude that defendant knew of the cocaine from the State's scant, vague, and ambiguous evidence would require drawing inferences from other inferences. We have long been skeptical of convictions that depend on inference stacking. *State v. Grim,* 854 S.W.2d 403, 420 (Mo. banc 1993)(Robertson, C.J., dissenting). Inferences must be based on established proved facts and that sound foundation is lacking in this case. Any conclusion that defendant here knew of the cocaine is a conclusion that simply is too remote and conjectural.

Considering the totality of the circumstances, we conclude that the State failed to produce sufficient evidence to prove that defendant knew of the presence of the cocaine. The State thus failed to produce sufficient evidence from which a reason-

able juror could have found defendant guilty beyond a reasonable doubt. We therefore reverse his conviction for possession of cocaine.

PATRICIA L. COHEN, J., and KURT S. ODENWALD, J., concur.