LAWRENCE E. MOONEY, JUDGE
The defendant, James R. Drabek, appeals the judgment entered on a jury verdict finding him guilty of possessing methamphetamine, a controlled substance, in violation of Section 195.202 RSMo. Mr. Drabek challenges the sufficiency of the evidence to support his conviction. He contends the State failed to adduce sufficient evidence to prove that he knowingly possessed the methamphetamine. We agree with his contention and reverse his conviction.
Factual and Procedural Background
Mr. Drabek was arrested after a search of his home in Doe Run, in Saint Francois County. Mr. Drabek lived alone in a mobile home that he rented. He had lived there for about eight years, and did not often have visitors. Five mobile homes were present on the property, and all but one were occupied at the time of Mr. Drabek's arrest.
Four law-enforcement officers from the Mineral Area Drug Task Force arrived at Mr. Drabek's home early one evening, without a warrant, to investigate an anonymous tip that an individual named "Jimbo" was manufacturing methamphetamine at the location of the mobile homes. As Trooper Sitton approached Mr. Drabek's home, he heard footsteps and people running around inside the home. He also observed *554 the doorknob move, as if someone was trying to lock it. Trooper Sitton knocked and announced himself, but no one answered the door. Trooper Sitton continued to hear footsteps and people moving around inside the home. He knocked several more times before Mr. Drabek answered the door. Mr. Drabek gave permission, orally and in writing, for the officers to enter and search his home because, in his words, he had "nothing to hide."
The officers removed Mr. Drabek and three visitors from the home, and began their search of the mobile home and surrounding area. Mr. Drabek remained outside the home during the search, entering the home only to answer questions. Trooper Sitton described Mr. Drabek as cooperative. The officers seized a number of items from inside and outside the home. Trooper Sitton explained at trial that all the seized items could be used in the consumption and manufacture of methamphetamine. From inside the home, officers seized: a roll of aluminum foil, folded aluminum foils, like those used for smoking methamphetamine, a deconstructed grinder with residue on it that tested positive for pseudoephedrine, cold packs, hydrogen peroxide, drain cleaner, and a propane torch. From outside the home they seized: seven punched ether cans, lithium strips, battery hulls, and packaging for aquarium tubing. These items were all in a communal burn pile located behind Mr. Drabek's home. Officers seized a can of Coleman fuel and a can of ether from a small metal shed to the side of the mobile home. They also found a purse on the front porch. Located inside that purse was an identification card for an individual named Andrea Douglass. Officers also found syringes, a spoon, and a eighteen-inch long cloth strip inside the purse. Ms. Douglas was the daughter of the woman who owned the property on which the mobile homes were located. She was not one of the three people present in the mobile home when the officers arrived. In addition to the items found in the home and surrounding property, officers also learned that Mr. Drabek had purchased pseudoephedrine eighteen times in the previous year, at more than one store.
Importantly, in searching the back porch of Mr. Drabek's mobile home, officers found a small box containing two glass smoking pipes, three straws, two spoons, and two small plastic bags with residue inside. Testing showed the residue to be 0.30 grams of methamphetamine. Officers also seized a one-quart can of acetone and a one-gallon bottle of muriatic acid from the back porch. Trooper Sitton could not recall exactly, but thought it possible the acetone was found with paint and paint brushes that were present on the porch.
The State adduced no evidence describing the porch. Mr. Drabek described the porch as "partially a room." When asked if it was enclosed, he responded: "Yeah, pretty much it was. Kind of. It was just roughed in. ... Nothing finished on the inside or outside really." According to Mr. Drabek, the porch was in the same condition at the time of the search as when he began living there. He explained that various items were already on the porch when he moved in, and had remained there throughout the entire time he had lived in the home. These items included the acetone and muriatic acid, which he said he never used. He also explained that other cans of solvent, paint, rollers, brushes, and "all kinds of stuff" were also on the porch when he took occupancy of the home. He testified that he had not yet cleaned off the porch, and that he had not yet had time to do anything with the porch. He also testified that he had never before seen the small box or its contents.
The State charged Mr. Drabek, in a seven-count indictment, with one count of *555 possessing methamphetamine, one count of manufacturing methamphetamine, four counts of possessing a chemical with the intent to manufacture methamphetamine, and one count of possessing a methamphetamine precursor with the intent to manufacture methamphetamine. The State adduced scant evidence regarding the box that contained the methamphetamine residue. Instead the State adduced testimony and evidence about the manufacturing charges. Trooper Sitton did testify that a box containing pipes, straws, spoons, and plastic bags with residue was found on the back porch. And the criminalist from the state crime lab did testify that the residue inside the box was 0.30 grams of methamphetamine. But she could not tell how long the substance had been in the box. Although officers photographed each of the seized items in the location in which each was found, none of those photographs were available at trial.[1] The box that had contained the methamphetamine was admitted into evidence.
In closing argument, the State discussed the box containing the methamphetamine two times, arguing first:
And the meth that was found ... was found in the box on the back porch. The defendant didn't want to admit to this meth. It was there. There is meth there. There is meth. What more is there to it? Count II, the defendant possessed meth. Okay. Again, the box.
And then later:
I want to ask you, again, to find James Drabek guilty. He simply cannot account for all these things. ... He can't account for why there's meth residue in a box on his back porch. He's refused to acknowledge it. The fact is it was there. It contained meth.
In rebuttal argument, after defense counsel argued that no evidence existed showing that Mr. Drabek knew that methamphetamine was in the box, the State pondered:
He lived there for years, and he didn't know if there was a box on his back porch containing meth?
The jury found Mr. Drabek guilty of possessing methamphetamine, and acquitted him on all other counts. The trial court denied Mr. Drabek's post-trial motions and sentenced Mr. Drabek to six years' imprisonment. Mr. Drabek now appeals, claiming that the State failed to adduce sufficient evidence that he knowingly possessed the methamphetamine.
Standard of Review
When a criminal defendant challenges the sufficiency of the evidence to support a conviction, this Court's review is limited to determining whether the State introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt. State v. Nash, 339 S.W.3d 500, 508-09 (Mo. banc 2011). In conducting this review, this Court disregards all evidence and inferences contrary to the judgment. Id. at 509. We accept as true all evidence favorable to the State, as well as all logical inferences that may be reasonably drawn from the evidence. Id. ; State v. O'Brien , 857 S.W.2d 212, 216 (Mo. banc 1993), This Court does not reweigh the evidence, nor do we act as a "super juror" with veto powers. Nash, 339 S.W.3d at 509. Rather, we determine whether, given the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. Id. However, this Court "may not *556 supply missing evidence or give the State the benefit of unreasonable, speculative or forced inferences." State v. Clark , 490 S.W.3d 704, 707 (Mo. banc 2016) (internal quotation omitted).
Discussion
The State charged Mr. Drabek with possessing a controlled substance, in violation of Section 195.202. Correspondingly, the trial court instructed the jury to find Mr. Drabek guilty if it found beyond a reasonable doubt that on or about May 9, 2012, in St. Francois County, Missouri, Mr. Drabek possessed methamphetamine, a controlled substance, knowing of its presence and nature.
Section 195.202 prohibits a person from possessing or having under his or her control a controlled substance. To sustain a conviction for possession of a controlled substance, the State must prove the following two elements: (1) conscious and intentional possession of the substance, either actual or constructive; and (2) awareness of the presence and nature of the substance. State v. Fuente, 871 S.W.2d 438, 442 (Mo. banc 1994). The possession element and the knowledge element are not entirely independent, in that both require proof of the defendant's knowledge of the presence of the controlled substance. State v. Purlee, 839 S.W.2d 584, 587 (Mo. banc 1992) ; State v. Anderson , 386 S.W.3d 186, 190 (Mo. App. E. D, 2012). "Possession without knowledge of such possession is not possession in the legal sense of that word." State v. Burns, 457 S.W.2d 721, 724 (Mo. 1970) ; Clark, 490 S.W.3d at 708. Indeed, our Missouri Supreme Court once noted that "no case has been found in which the defendant's conviction of illegal possession of narcotics has been sustained where the prosecution has failed to prove, either directly or by inference, that the defendant had knowledge of the presence of the contraband substance." Burns, 457 S.W.2d at 725.
Due process commands that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof-defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia , 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; see also, In re Winship , 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ; O'Brien, 857 S.W.2d at 215. We conclude that the State presented insufficient evidence to prove that Mr. Drabek had knowledge of the presence of the charged methamphetamine. We recognize that, absent a confession, knowledge is often not susceptible of direct proof. See State v. Gonzalez , 235 S.W.3d 20, 27 (Mo. App. S.D. 2007). And we recognize that both possession and knowledge may be proved by circumstantial evidence. Fuente , 871 S.W.2d at 442. But a criminal conviction cannot be based upon probabilities and speculation. Anderson , 386 S.W.3d at 190.
As noted, possession may be actual or constructive. Section 195.010(34); State v. Morgan , 366 S.W.3d 565, 575 (Mo. App. E.D. 2012). A person has actual possession of a controlled substance if, "with the knowledge of the presence and nature of the substance," the person has the substance either "on his or her person or within easy reach and convenient control." Section 195.010(34); Clark , 490 S.W.3d at 709. A defendant's knowledge of a controlled substance may be reasonably inferred from the defendant's actual possession of that substance. See State v. Gonzalez , 235 S.W.3d 20, 26 (Mo. App. S.D. 2007).
Here, the State does not argue that Mr. Drabek had actual possession of *557 the methamphetamine. Nor does evidence exist to support such a conclusion. The officers did not find the methamphetamine on Mr. Drabek's person. Rather they found this methamphetamine enclosed in a plastic bag in a small box on the back porch of Mr. Drabek's mobile home. And officers did not find methamphetamine in Mr. Drabek's immediate vicinity. Mr. Drabek was inside the home when law-enforcement officers arrived. No one observed Mr. Drabek on the back porch. And Mr. Drabek remained outside the home during the officers' search of the home and surrounding area. Thus he did not have actual possession. See State v. McCall , 412 S.W.3d 370, 373 (Mo. App, E.D. 2013) ; State v. Botts , 151 S.W.3d 372, 375 (Mo. App. W.D. 2004).
Of course, the State may also obtain a conviction based on constructive possession. A person has constructive possession of a controlled substance if one has "knowledge of the presence and nature of a substance" and "the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons." Section 195.010(34); Clark , 490 S.W.3d at 709. Constructive possession will suffice to sustain a conviction for possession of a controlled substance if facts are present to buttress an inference of defendant's knowledge of the presence of the controlled substance. Purlee , 839 S.W.2d at 588 ; State v. Falkner, 672 S.W.2d 373, 375 (Mo. App. W.D. 1984).
At a minimum, constructive possession requires evidence that the defendant had access to and control over the premises where the substance was found. Clark , 490 S.W.3d at 709. The State argues that Mr. Drabek's sole occupancy of the mobile home was sufficient to prove that he had exclusive possession of the mobile home. From this, the State contends that a juror could reasonably infer that Mr. Drabek was the only person who had access to, and control over, all areas of the home, including the back porch where the methamphetamine was found. The State thus argues that Mr. Drabek's exclusive control of the premises raises an inference of possession and control of the substances found on those premises, sufficient to sustain a conviction. Though correctly stating the principles of law, the State's argument founders from its faulty foundation.
True, in narcotics or controlled-substance cases, the law has developed a policy that a person in exclusive control of premises will be deemed to have possession and control of any substance found on the premises. State v. Wiley, 522 S.W.2d 281, 292 (Mo. 1975) ; State v. Funk, 490 S.W.2d 354, 360 (Mo. App. 1973) ; Falkner, 672 S.W.2d at 375. The basis for this inference was long-ago explained:
This inference is based largely upon the nature of the commodity and the manner in which its illegal traffic is conducted. By law the use of narcotics, except for specified medicinal purposes, is rigidly condemned. Because of this illegitimate nature of narcotics, they are sold for exorbitant sums on the black market and are therefore of great value to the person possessing them. Furthermore, since their mere possession may subject such person to severe criminal consequences, the narcotics traffic is conducted with the utmost secrecy and care. Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters.
[T]herefore, ... where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which *558 might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt.
Funk, 490 S.W.2d at 360-61 (internal quotation omitted); see also Wiley , 522 S.W.2d at 292. Thus, "where one has exclusive possession of a home or apartment in which narcotics are found, it may be inferred, even in the absence of other incriminating evidence, that such person knew of the presence of the narcotics and had control of them." Funk, 490 S.W.2d at 362 (internal quotation omitted); Clark , 490 S.W.3d at 709 ; State v. Zimmerman , 169 S.W.3d 194, 197-98 (Mo. App. S.D. 2005).
Here the State adduced insufficient evidence that Mr. Drabek had exclusive possession of the premises. Mr. Drabek may have been the sole occupant of his home, but he was not the only person with access to, and control over, the porch. The State's theory might have merit, if the methamphetamine was inside the home. See, e.g. Zimmerman , 169 S.W.3d at 196-98 (finding exclusive possession of controlled substance found in kitchen). But it was not. The methamphetamine was found inside a plastic bag in a box somewhere on Mr. Drabek's back porch. And the State adduced scant evidence about that porch. It is only described as "partially a room," "kind of" enclosed, and "just roughed in," A porch is commonly known or defined as an area adjoining an entrance to a building. See, e.g., Webster's New World College Dictionary 1051 (3rd ed. 1997); Merriam-Webster Dictionary , www.merriam-webster.com/dictionary/porch (last accessed 30 April 2018), The area may or may not be covered, and the area may or may not have walls. A porch, being on the outside of the home, adjacent to a home's entrance, can by its very nature be an area accessible to one and all. Then again, a porch can be enclosed, with its own door, restricting access to all. The State, however, failed to establish that Mr. Drabek's porch was entirely closed. Nor did the State prove that access to the porch from the outside was restricted. The presence of Ms. Douglas's purse on the front porch implies that people had access to Mr. Drabek's front porch. In Anderson , this Court could not find exclusive possession of drugs found in hotel room, even though the defendant lived in the room alone, where the State presented no evidence that Anderson excluded access by hotel personnel, such as maid service. State v. Anderson , 386 S.W.3d 186, 191-93 (Mo. App. E.D. 2012). Similarly here, Mr. Drabek may have been the only occupant of the home, but the State presented no evidence showing that Mr. Drabek restricted access to his porch, such that he enjoyed exclusive possession and control of that porch.
Additionally we note the presence of three visitors in Mr. Drabek's home. The State, citing to Zimmerman , would have us ignore those visitors. In Zimmerman , the Court held that the defendant's sole occupancy of the house was sufficient to prove his possession of items found in his home, notwithstanding the fact that two visitors were present in the home at the time law enforcement officers arrived and seized those items. Zimmerman , 169 S.W.3d at 198. A close reading of the Court's opinion, however, reveals that the defendant had been at the house the entire day before he was arrested, and the visitors had arrived only a short time before law-enforcement officers came to the house. Id. at 197. Here, however, we have no such evidence. The State did not adduce evidence of how long Mr. Drabek had been home when the officers arrived. And the State did not adduce evidence of how long the visitors had been in the home prior to the officers' arrival. The State argues that the visitors were "simply guests" who would not have had free rein over Mr. Drabek's mobile home. The State, however, produced no evidence supporting this *559 contention. Given the lack of evidence adduced by the State on this matter, any inference of exclusive possession here leaps too far. Thus, a rational fact-finder could not reasonably infer that Mr. Drabek possessed the methamphetamine. See State v. Moses , 265 S.W.3d 863, 866 (Mo. App. E.D. 2008).
If the accused does not have exclusive possession of the premises, the State must present further evidence connecting the accused with the controlled substance before it can be said that the accused possessed the substance. Clark , 490 S.W.3d at 709 ; Anderson, 386 S.W.3d at 191 (citing Purlee, 839 S.W.2d at 588 ). The State must present some incriminating statement or circumstance implying that the accused knew of the presence of the controlled substance and that the same was under his control. Clark, 490 S.W.3d at 709. As earlier noted, the inference that one who has exclusive control of premises also has knowledge and constructive possession of narcotics found therein is predicated upon the teaching of human experience that narcotics are rarely, if ever, found unaccountably in a person's living quarters," State v. Nobles, 699 S.W.2d 531, 533 (Mo. App. E.D. 1985) (citing Funk, 490 S.W.2d at 360-61 and Wiley, 522 S.W.2d at 292 ). But, "where use and control of the premises is not exclusive, this predicate is diluted and the inference is no longer compelling in the absence of some further evidence or admission connecting the defendant with the illegal drugs." Nobles, 699 S.W.2d at 533, "Guilty knowledge is not presumed," Funk, 490 S.W.2d at 361 (internal quotation omitted).
Additional incriminating circumstances that will support an inference of knowledge and control include: the defendant's easy accessibility or routine access to the items; the defendant's close proximity to the items in plain view of the police; finding defendant's personal belongings with the items; the presence of large quantities of drugs at the scene where the defendant is arrested; the odor of drugs, or the presence of a chemical odor; admissions by the defendant; and conduct by defendant indicating a consciousness of guilt, such as making false statements in an attempt to deceive the police, nervousness during the search, and flight from law enforcement. Anderson , 386 S.W.3d at 191.
The State produced no evidence of these incriminating circumstances. Although officers found the methamphetamine on the back porch of Mr. Drabek's home, the State presented no evidence that Mr. Drabek routinely accessed the porch, or that he was found in close proximity to the methamphetamine, or that the substance was found in plain view. The State presented no evidence that Mr. Drabek's fingerprints were found on the box or on the items in the box. Nor did the State present evidence that Mr. Drabek's belongings were found close to, or comingled with the box containing the methamphetamine. In fact, the State adduced no evidence whatsoever of the box's location on the porch. Was the box visible, on top of other items, such that one might fairly infer that Mr. Drabek knew of the box's presence? Or was it buried in a pile, hidden from view? The State also presented no evidence that officers found large quantities of drugs on the premises, or that officers detected the presence of a chemical odor or the odor of drugs at the scene. The State presented no incriminating admissions by Mr. Drabek. The State adduced no evidence that he had recently used drugs, or that he appeared under the influence of drugs at the time of his arrest. Nor did the State present evidence of any conduct by Mr. Drabek that the State claimed demonstrated a guilty conscience, such as evidence that Mr. Drabek attempted to flee, that he was nervous, or that he gave false information.
*560 To connect Mr. Drabek with the methamphetamine, the State points out that methamphetamine was found on the back porch of Mr. Drabek's home, where he lived alone for a number of years, with few visitors. The State also relies on the suspicious circumstances in and around the home, which the State contends show that Mr. Drabek was the possessor of the methamphetamine. Unquestionably, officers found numerous items that are associated with the manufacture and consumption of methamphetamine. A fact-finder might reasonably conclude that methamphetamine was manufactured and used on the premises. But this does not establish Mr. Drabek's possession of the charged methamphetamine found on the back porch. Officers found most of the items in distinctly different locations than the box containing the methamphetamine and its associated paraphernalia. And as to the acetone and muriatic acid seized from the back porch, the State presented no evidence that those items were found near or with the methamphetamine. This Court was presented with a similar situation in State v. Metcalf , 182 S.W.3d 272, 275 (Mo. App. E.D. 2006). There, the defendant had a notebook in his pocket that contained a partial list of items used in methamphetamine production. We held that this did not show defendant's knowledge of the presence of methamphetamine found in his jointly-controlled home. And thus, the notebook was not an additional incriminating factor that would buttress the inference of possession. Id. So too, here. The presence of these items does not show that Mr. Drabek knew that methamphetamine was located inside a box on his back porch.
Ultimately, the State's case rests upon a stack of inferences. Of course, the State may prove its case by circumstantial evidence. The State argues the jury could conclude from the methamphetamine-related items that Mr. Drabek was making methamphetamine, and hence, because he was making methamphetamine, that he knew how to consume methamphetamine, that he in fact did consume methamphetamine, and thus he would know what methamphetamine looked like, and would know the nature of the substance. Put simply, the State argues that the jury could infer from the circumstances that Mr. Drabek was doing something with methamphetamine, and at the very least that something was possession. This is the very type of attenuated reasoning that underlies the proscription against inference-stacking. Nobles , 699 S.W.2d at 533. This Court has long been skeptical of convictions that depend on inference-stacking. Anderson , 386 S.W.3d at 193. "Inferences must be based on established proven facts." Id. That sound foundation is lacking in this case. We thus cannot conclude that Mr. Drabek constructively possessed the methamphetamine.
In the end, the State proved that officers found methamphetamine in a plastic bag in a small box that was somewhere on the back porch of Mr. Drabek's mobile home. However, the State presented no direct evidence of Mr. Drabek's knowledge of the presence of the methamphetamine on his back porch. And it presented insufficient evidence from which knowledge could fairly be inferred. In arguing the case to the jury, the State simply argued, "It was there," and asked, "What more is there to it? Our rejoinder is that due process requires more. The State failed to produce sufficient evidence to prove that Mr. Drabek knew of the presence of the methamphetamine. The State thus failed to produce sufficient evidence from which a reasonable juror could have found Mr. Drabek guilty beyond a reasonable doubt. Any conclusion that Mr. Drabek knew of the methamphetamine found on his back porch is too remote and conjectural. We therefore reverse his conviction for possession of methamphetamine.
*561 As reversal is premised solely on the insufficiency of the evidence, we do not remand this case to the trial court for a new trial. The double-jeopardy clause of the United States Constitution precludes a second trial after a reversal based solely on the insufficiency of the evidence. State v. Barber , 635 S.W.2d 342, 345 (Mo. 1982) ; Nobles , 699 S.W.2d at 534. We therefore remand and direct the trial court to enter a judgment of acquittal.[2]
JAMES M. DOWD, C.J., and LISA VAN AMBURG, J., concur.

The parties represent that officers could not recover anything off of the computer on which the photographs had been saved due to problems with its hard-drive. Also, they could not locate the thumb drive that contained the pictures.

We deny as moot Mr. Drabek's motion for relief based on the State's disposal of a trial exhibit (the box that contained the methamphetamine) during the pendency of this appeal.